(148 App. Div. 185.)

### ZIEGFELD v. NORWORTH et al.

(Supreme Court, Appellate Division, First Department. December 29, 1911.)

1. INJUNCTION (§ 220\*)—STAYING FINAL INJUNCTIONAL DECREE—EFFECT.

An order staying a final injunctional decree is good until reversed, and failure to obey the injunction after the order and prior to its reversal is not ground for contempt.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 442; Dec. Dig. § 220.\*]

2. INJUNCTION (§ 219\*)—TEMPORARY INJUNCTION—VIOLATION.

An injunctional order which by consent of plaintiff modifies a temporary injunction is not a nullity, and, if improvident, plaintiff must secure the vacation of the modification, and, until vacated, he must obey the order as modified.

[Ed. Note.—For other cases, see Injunction, Dec. Dig. § 219.\*]

3. CONTEMPT (§ 21\*)—VIOLATION OF ORDER OF COURT.

An order alleged to be violated must be clearly expressed, and, when applied to the act complained of, it must appear with reasonable certainty that it has been violated to justify adjudging one guilty of contempt for a violation.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 63–66; Dec. Dig. § 21.\*]

4. INJUNCTION (§ 223\*)—VIOLATION OF ORDER OF COURT—CONTEMPT.

A temporary injunction restrained defendants under contract with plaintiff from rendering professional services as actors for others than plaintiff. The order was, by consent of plaintiff, modified so as to impose on him the performance of specified acts which he failed to perform and sought to excuse nonperformance on the ground that defendants' request for employment and their offer to perform were not made in good faith. Defendants performed for others. *Held* not to show a violation by defendants of the original injunctional order.

[Ed. Note.—For other cases, see Injunction, Dec. Dig. § 223.\*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, New York County.

Action by Florenz Ziegfeld, Jr., against Nora Bayes Norworth and another. From an order denying a motion to punish defendants for a contempt for violating an injunctional order, plaintiff appeals. Affirmed.

See, also, 142 App. Div. 937, 127 N. Y. Supp. 1151.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, CLARKE, and DOWLING, JJ.

Dittenhoefer, Gerber & James (David Gerber, of counsel), for appellant.

William Klein (Benjamin N. Cardozo, of counsel), for respondents.

CLARKE, J. This is an appeal from an order of the Special Term denying a motion to punish the defendants for contempt in disobeying an injunction pendente lite granted September 21, 1909, restraining them from performing upon the stage except under the management of the plaintiff. This injunction order was affirmed 134 App. Div. 951, 118 N. Y. Supp. 1151; motion for reargument or leave to go to the Court of Appeals denied November 12, 1909, 134 App. Div. 969, 119 N. Y. Supp. 1151. On the 22d of November, 1909, a motion was argued before the Special Term on an order to show cause why an order should not be made modifying the order of September 21st, to the extent of vacating that portion thereof which restrains and enjoins the defendants herein until the final hearing and determination of this action from performing in vaudeville and rendering services to and for any other person, company, or corporation and performing in any other theater, place of public amusement, or in connection with any other company or theatrical entertainment, except that of the plaintiff herein. In other words, this court having affirmed the injunction granted by one judge at Special Term, the ingenious scheme was devised of getting another Special Term judge to reverse it. But upon the offer and consent of the plaintiff, who wanted the defendants back at work, the court made an order, dated December 1, 1909, providing as follows:

"Ordered that the motion to modify the said injunction in the respects prayed for is in all things granted, unless the plaintiff shall pay to the defendants the sum of $900 per week, the salary named in the contract between the plaintiff and the defendants, which shall commence from the 22d day of November, 1909, inclusive, and the plaintiff shall, in addition to paying the salary mentioned in the contract, actually put the defendants and each of them to work, pursuant to the terms of the contract and in the play mentioned in the contract and under the conditions stated in the contract no later than the evening of the 6th day of December, 1909, and it is further ordered that in the event that the plaintiff performs the conditions above named; that is to say, pays the salary mentioned and reserved in the contract for the defendants, commencing from the 22d day of November, 1909, and puts the defendants to work as above stated, not later than the evening of the 6th day of December, 1909, and in that event the said motion in all things denied. And it is further ordered that this order shall be deemed to have been made, and is made, without prejudice to the rights of any party, plaintiff or defendants, as they existed at the time of the making of this application and up to the time of the making of this order."

The plaintiff paid to defendants $900 for the week beginning November 22d, although under the contract the defendants were not entitled to pay for time used in rehearsals, and expended $293.20 in advertising and made all plans to put the defendants at work on December 6th, but before that time arrived the defendant Nora Bayes Norworth had refused to be measured for her costume, had neglected to attend rehearsals, had refused to sing songs, and had generally acted in such manner as made it quite evident that all the pretenses of the defendants had been made in bad faith, and that they were striving for a breach of the contract by the plaintiff. The result was that plaintiff did not put them on. They thereupon immediately appeared in the play known as "The Jolly Bachelors," produced by a rival manager, and received $1,000 a week. .

The trial was had on April 27 and 28, 1910, and on May 11th the court signed the final decree finding for the plaintiff and granting a permanent injunction. In its opinion the court stated:

"This controversy which has been a source of annoyance and pecuniary loss to all persons concerned has been caused by the defendants' failure to appreciate the binding obligations imposed by a contract. Their conduct has been unreasonable, without legal justification and in disregard of the letter and spirit of the provisions of the agreement of April 19, 1909. Their claim that the plaintiff discharged them is not sustained."

And in the findings of fact the court found as follows:

"That after the affirmance by the Appellate Division of the said order continuing the injunction, a motion was made on behalf of the defendants for a reargument, or, in the alternative, for leave to appeal to the Court of Appeals from the said order continuing the said injunction, which motion was submitted on November 5, 1909. That on the same day, and before any decision was rendered upon the said motion, these defendants by letter prepared after conference with their counsel indicated a desire to perform for the plaintiff under the said contract, conditional, however, upon this litigation continuing and the action being tried, and, further, that, in the event of the action being decided in favor of the defendants, that the defendants hold plaintiff liable for all damages caused by the injunction. (17) That the said offer to return to work for the plaintiff was not made in good faith. (18) That plaintiff on the 17th day of November, 1909, informed the defendants, through their attorney, that, if they desired to perform under the contract, they could report for duty on the following Monday, November 22d, from which time their salary will commence at the rate and as specified in the contract, and that they report early enough to the stage director to enable him to rehearse them and arrange for the appearance of the defendants, and at the same time sending to the defendants, through their attorney, two songs for the defendant Nora Bayes Norworth to sing. (19) That on representation of the defendants that they were ready to perform under their contract and sing the songs required of them by the plaintiff an order was entered, bearing date December 1, 1909, providing for the return to the said play 'Follies of 1909' of the defendants on the evening of December 6, 1909, and in the meantime, commencing November 22, 1909, the plaintiff undertook to, and by said order was, to pay the defendants a salary of $900 a week, the sum mentioned in the contract, as compensation for their services. (20) That at said time the plaintiff had announced and advertised as the attraction of the said play 'Follies of 1909' Eva Tanguay, and required the time intermediate November 22, 1909, and December 6, 1909, to arrange to change the printing, advertising, and announcements so as to cease featuring Eva Tanguay and featuring Nora Bayes Norworth as the attraction, also to secure the release of Eva Tanguay from further appearing in the said production, and to give opportunity to the defendants to rehearse their songs and prepare

their costumes, and make full and proper arrangements for the appearance of the defendants in the said musical revue. (21) That the plaintiff paid the defendants the sum of $900 for the week ending Saturday, November 27th, and expended the sum of $293.20 in preparing for the appearance of the defendants with 'The Follies of 1909' at the Grand Opera House in the city of New York commencing December 6, 1909, for printing and other expenses in connection with the said production at the said Grand Opera House, commencing December 6, 1909, in widely advertising and announcing the fact that the defendant Nora Bayes Norworth would appear with the said musical revue at the said Grand Opera House at the opening performance at said theater on Monday evening, December 6, 1909, and featuring her as the attraction of the production. (22) That the said defendants did not in good faith intend to appear or play for the plaintiff in the said production on December 6, 1909, and refused to sing the songs assigned to them by the plaintiff, and the songs which they promised to sing at the time of the argument of the motion on November 22, 1909, resulting in the order of December 1, 1909, above referred to. (23) That the defendant Nora Bayes Norworth refused to be measured for the costume which she had agreed to wear for her appearance in the said production, and to rehearse for the production, and did not in good faith intend to perform the contract on her part. (24) That the offer of the defendants to return and play under the management of the plaintiff and in the said musical revue was not made in good faith."

It will be seen that the court upon the trial, and upon evidence, distinctly passed upon the question of fact as to the performance of both parties after and under the order of December 1, 1909, and found that the said defendants did not in good faith intend to appear or play for the plaintiff in the said production on December 6, 1909, and refused to sing the songs assigned to them by the plaintiff and the songs that they promised to sing at the time of the argument of the motion on November 22, 1909, upon which the order was entered. So that the very questions that were represented to the Special Term upon the contempt proceeding had been decided adversely to the defendants in the findings made upon the trial.

As stated, the defendants were playing in the "Jolly Bachelors" at the time of the final decree. On the same day they made a motion to suspend the injunction contained in that final decree, before another judge at the Special Term, who kept the matter until July 22, 1910, when he granted it. The appeal could not be reached until November 4, 1910, when this court reversed the stay. 140 App. Div. 414, 125 N. Y. Supp. 504. The final decree was affirmed January 27, 1911 (142 App. Div. 937, 127 N. Y. Supp. 1151), and the appeal to the Court of Appeals was dismissed June 6, 1911 (202 N. Y. 580, 96 N. E. 1135). This proceeding to punish the defendants for their contempt in violating the injunction pendente lite was instituted February 17, 1911. The term of the contract expired on February 25, 1911.

[1] It will be seen that during a large portion of the period covered by the injunction the defendants failed to obey it, and made, as is shown, at least $56,000 in so doing. For the period between May 11, 1910, and November 4, 1910, of course, there is no relief. The order staying the final decree was good until reversed. There is no claim here of any violation of the permanent injunction.

The plaintiff confines himself to the period from January 1, 1910, when defendants began to perform in the "Jolly Bachelors," down to May 11, 1910, the date of the final decree.

[2] The difficulty with the plaintiff's position is that by the order of December 1, 1909, made, as he says, upon his offer and consent, the temporary injunction was modified to the extent that pending the trial of this action the defendants and each of them should be permitted to work for any theatrical manager other than this plaintiff, unless the plaintiff did certain specified things, to wit, pay the defendants $900 a week beginning on the 22d of November, and put them to work not later than the 6th day of December, 1909, in the play mentioned in the contract and under the conditions stated therein.

It is conceded that plaintiff did not perform all of the conditions required of him by said order. He does not claim that he did. He excuses his nonperformance upon the ground that the request for employment and the offer of the defendants to perform was not in good faith. Assuming that this was true, and the assertion has the support of the findings made upon the trial, and in my opinion is completely supported upon the record now before us, he allowed the order to stand, he made no motion to modify it, or have it vacated, upon the ground now relied upon of the bad faith of the defendants, nor did he take an appeal from said order. The order cannot be regarded as a nullity. It had been duly brought on before the court, voluminous papers had been submitted, argument had been had, and it had been finally entered upon plaintiff's consent.

The defendants claim that by plaintiff's failure to put them to work upon the date fixed in the order he had violated its provisions, the preliminary injunction was no longer in force, and they had the right to seek employment elsewhere, which they did. Plaintiff apparently acquiesced, for he took no proceedings to enforce the preliminary injunction or to punish them for a violation thereof until February 13, 1911, considerably over a year after the entry of the order of December 1, 1909, and after the affirmance by this court of the final decree.

[3] Contempt proceedings must be based upon the violation of a clear and precise mandate of the court. "It is, of course, not subject to debate that the order of a court having jurisdiction must be implicitly obeyed, however erroneous it may be, and that it is no answer for one called upon to answer for disobedience that the order or judgment was broader than the facts warranted, or gave relief beyond what was demanded or what the court, upon the facts, was justified in awarding. * * * But as punishment for contempt involves, or may involve, not only loss of property, but liberty, it is a reasonable requirement that the mandate alleged to be violated should be clearly expressed, and that, when applied to the act complained of, it should appear with reasonable certainty that it had been violated." Ketchum v. Edwards, 153 N. Y. 534, 47 N. E. 918.

[4] We cannot state in view of the order of December 1, 1909, that there was a violation of the clear mandate of the court expressed in the injunction order of September 21, 1909. If the order of December 1, 1909, was improvident, it was the duty of the plaintiff to obey it or get rid of it. He could not refrain from obeying it, and then ignore it by instituting proceedings as for a contempt of a prior

order which it affected and modified. If plaintiff's contention is sound, if he now has the right to move under the injunction pendente lite, with the order of December 1, 1909, outstanding, he would have the same right to move for the punishment of the defendants for their contempt of the final decree granting the permanent injunction during the time said decree was stayed pending the appeal.

Plaintiff concedes that he has no right to move under the final decree, and the order appealed from itself recites:

"The plaintiff consenting in open court to eliminate any question as to any alleged contempt in giving performances subsequent to May 12, 1910, when the final judgment was entered, because of the order * * * dated the 22d day of July, 1910, which suspended the operation of the injunction, contained in said final decree until the hearing and decision of the appeal taken by the defendants to the Appellate Division from said final judgment and decree, * * * and hereby expressly waiving any claim as to any alleged contempt resulting by reason of defendants performing thereunder."

I conclude, therefore, that the appellant has not sustained the burden of establishing the willful violation of a valid and existing mandate of the court, and that the order appealed from should be affirmed, with $10 costs and disbursements. All concur.