[Nos. 2073, 2074.   July 30, 1917.]
STATE ex rel. PATTON, Atty. Gen., v. MARRON.
SAME v. WOOD.

### SYLABUS BY THE COURT.

1.   After an order of suspension by this court from practice in all of the courts of the state, it is a contempt of this court for an attorney to hold himself out as an attorney at law, by means of keeping open an office and displaying a sign or signs upon the windows and at the entrance of his said office, indicating that the same is a law office and that he is an attorney at law, and by using and sending through the mails stationery indicating that the sender is an attorney at law, and by permitting his name to be published in a telephone directory as an attorney at law, and in a city directory.

P. 633

2.   An order of suspension from practice in "all of the courts of this state" prohibits an attorney at law from practice in the probate or other inferior courts during the term of such suspension.

P. 638

Roberts, J., dissenting.

Original proceeding in contempt by State of New Mexico on the relation of H. L. Patton, Attorney General, against Owen N. Marron and Francis E. Wood. Respondents found guilty of contempt.

See, also, 22 N. M. 252, 160 Pac. 391.

H. L. Patton, Attorney General pro se. A. B. Renehan, of Santa Fe, for defendant.

State ex rel Patton, Atty. Gen. v. Marron, 22 N. M. 632.

## OPINION OF THE COURT.

HANNA, C. J.   On September 23, 1916, this court made an order suspending each of the defendants from practice in all the courts of this state" for a period of one year. It having come, informally, to the ears of the members of the court that such order was being violated by the respondents, the matter was referred to a committee of the bar of Bernalillo county, with instructions to investigate the respondents, which was done, and a report was duly made to the court. The report showed such a state of facts that the court deemed it proper and necessary to refer the matter to the Attorney General, with instructions to prepare and file informations as for contempt, which resulted in the present proceedings.

[1] The information, as to the said Marron, charged in paragraph 2, among other things: That ever since said order of suspension he has maintained a law office in the city of Albuquerque, containing a law library, office furniture and fixtures, and has maintained therein one or more stenographers, and has habitually kept said office open to the public and his clients, and has, upon the windows and at the entrance to said law office, conspicuously displayed signs in words as follows: "Marron & Wood, Law Offices;" and has habitually written letters to clients and others and sent the same through the mails upon stationery at the head of which was printed the following: "Marron & Wood, Attorneys and Counselors, State National Bank Building, Albuquerque, New Mexico. Owen N. Marron—Francis E. Wood;" and has habitually mailed letters in envelopes upon which was printed a return card bearing the words, "Marron & Wood, Attorneys and Counselors." That he caused to be inserted in the telephone directory of Albuquerque, issued and published in January, 1917, the following address and telephone number in its proper place in alphabetical arrangement: "Marron & Wood, Attys. State Nat. Bnk. N.—55." And that in January, 1917, he caused to be inserted in Worley's Albuquerque City Directory, a business directory circulated in said city for 1917, a card as follows: "Marron & Wood (O. N. Marron, F. E. Wood), Attorneys, 1—4, State National

Bank bldg., Phone 55." Respondent answered these charges admitting the use of the stationery as alleged, asserting that the names in the telephone directory were inserted by the telephone company, without express orders and without his attention being called to the same, as was the case with the Albuquerque City Directory, and that on March 10, 1917, he caused the words indicating that his said offices were law offices to be removed from the windows and entrance of the same, not on account of the order of suspension, but on account of the act of the Legislature which went into effect on that day, and which prohibits unlicensed persons from holding themselves out as attorneys at law. Chapter 4, Laws 1917, § 4. He alleged that all of the acts with which he is charged were done without any intent to violate the order of suspension, and in the bona fide belief, after advice of counsel, that the order of suspension prohibited him from practice in this court and the district courts only, and that he was still permitted to practice law in the probate courts and justices of the peace and otherwise to the same extent as an unlicensed person.

He is charged in the fourth paragraph of the information with violating the said order of suspension in this: That on October 19, 1916, he prepared, or caused to be prepared in his said law office at Albuquerque a complaint, affidavit, and bond in attachment which were thereafter filed in the district court of Bernalillo county in an action entitled "State National Bank v. F. J. Dye," No. 10647 on the civil docket of said court. That the name of William A. Kelcher appears upon said files as attorney for the plaintiff, but that in truth and in fact the said Marron was the attorney for the plaintiff, and that said Kelcher was appearing for him. Respondent answered that he was instructed by the officers and directors of the State National Bank of Albuquerque, the plaintiff in said cause, and of which he is one of the directors, to take measures to enforce the note held by the bank against the said F. J. Dye, and to have proceedings instituted to procure a writ of attachment against Dye to enforce the note and to procure an attorney to institute and conduct said proceedings on behalf of the bank, and that he turned the note over to his

stenographer, and instructed her to procure the services of either Mr. George S. Klock or Mr. William A. Keleher to act for the bank, and that his stenographer reported that Mr. Klock was out of town and Mr. Keleher was engaged in court, and, haste being necessary to protect the interests of the bank, he directed his stenographer to copy a form used in an attachment suit, deliver it to Mr. Keleher, and assist him in getting up the papers for the attchment, and that his stenographer did so assist Mr. Keleher, and thereupon Mr. Keleher filed the same, and has since had entire charge, direction, and control of said action, and that he (respondent) never was directly or indirectly attorney for the plaintiff in said cause, and that said Keleher was not appearing for him, but was appearing for the plaintiff.

He is charged in the tenth paragraph of the information with having violated said order of suspension in this: That he represented one Roy McDonald as administrator of the estate of A .J. Hawley, deceased, in the probate court of Bernalillo county, N. M., with reference to the preparation of papers, pleadings, and orders, the commencement of said proceedings, the appearance in said cause on behalf of said McDonald, and advising said client upon questions of a legal nature relative to said matter. The respondent answered that during the year 1915, prior to September, 1916, he had represented the estate of A. J. Hawley, deceased, and Roy McDonald as administrator of said estate, and had performed services in the premises of the value of more than $35, and that subsequent to September, 1916, at the request of said Roy McDonald and to save expense, he assisted in the preparation of his final report as administrator, and drew certain orders in the probate court to close the account, that the estate was a small one, heavily indebted, and that the respondent made no claim for any compensation for services performed after September, 1916, and that said services were so rendered in the full and honest belief, on the part of the respondent, that under the provisions of our statute he was not barred or forbidden by the order of suspension from appearing for or representing persons in the probate court.

The information contains several other specific charges, some of which are denied by the respondent and some of which are admitted with certain explanations attending the circumstances. It will not be necessary to consider these other charges and they are, therefore, not here set out.

The Attorney General filed a demurrer to each of the answers of the respondent herein before outlined upon the ground that the same failed to state facts constituting a defense to the charge above specified. This demurrer we have sustained.

The same order of suspension was made by this court on September 23d against the respondent Francis E. Wood, the said Marron and Wood being partners in the practice of the law at Albuquerque, N. M. The information as to the said Wood, in paragraph 3 thereof, makes the same allegation as is made against the respondent Marron, in regard to maintaining and keeping open a law office in the State National Bank Building in the city of Albuquerque, the displaying of signs, the use of stationery, and the sending of the same through the mail, the inserting of the names in the telephone directory and in Worley's Albuquerque City Directory. The same answer thereto is interposed by the respondent Wood as was interposed by the respondent Marron. Certain other charges are made against the respondent Wood, to the effect that he drew a mortgage and charged a fee of $10 therefor, and that he did appear at a hearing before the state engineer of New Mexico, and examined and cross-examined various witnesses and did interpose objections to evidence, and that he did examine certain abstracts of title and give legal opinions thereon. It will not be necessary to treat these charges or the denial or the explanations thereof made by the respondent Wood.

In the eighth paragraph of the information the respondent Wood is charged with the same act, in regard to the action entitled "State National Bank v. F. J. Dye," No. 10647, as are charged against the respondent Marron. Respondent Wood, however, denies, in his answer, that he had any connection whatever with the said action and was ab-

State ex rel Patton, Atty. Gen. v. Marron, 22 N. M. 632.

sent from the city of Albuquerque when the action was brought, and knew nothing of it until he learned of it afterwards.   Certain other charges are contained in the information against the respondent Wood which the Attorney General has elected to dismiss.   The respondent Wood avers generally, in regard to the charges, that each and every act done by him, as charged or otherwise, was done under the honest belief that he had a right to do the act, and that he was not deprived by the order of suspension from any of the privileges enjoyed by citizens generally who are not admitted to practice as attorneys and counselors at law, and that he had taken counsel as to his rights in the premises, and had been advised to that effect, and that his acts were without any purpose or intent to disobey or violate the order of suspension of this court.

The Attorney General filed a demurrer to certain paragraphs of the answer which included the answer to the charge of keeping open a law office, the keeping of signs upon the window and at the entrance thereof, the causing to be inserted in the telephone directory of the city of Albuquerque the said names and the using of the stationery, and the causing to be inserted the names in the Albuquerque City Directory, upon the ground that the same did not state facts sufficient to constitute a defense to said charge. This demurrer was sustained by the court.   Upon the sustaining of the demurrers the Attorney General moved for judgment on the pleadings, the respondents both declining to plead further and filing a statement of their inability to plead otherwise than in their said answers.   The motion of the Attorney General has been granted.

This record presents two questions for consideration: First, After an order of suspension by this court from practice in all of the courts of the state, is it a contempt of this court for an attorney to hold himself out as an attorney at law, by means of keeping open an office and displaying a sign or signs upon the window and at the entrance of his said office, indicating that the same is a law office and that he is an attorney at law, and by using and sending through the mails stationery indicating that the sender is an attorney at law, and by permitting his name to

638     SUPREME COURT OF NEW MEXICO,

State ex rel Patton, Atty. Gen. v. Marron, 22 N. M. 632.

be published in a telephone directory as an attorney at law, or in a city directory? Second, Does an order of suspension from practice in all of the courts of this state prohibit an attorney at law from practice in the probate or other inferior courts during the term of such suspension? Upon both reason and authority both of these questions must be answered in the affirmative.

It must be apparent to any fair-minded person that the holding of himself out as an attorney at law, by means of the keeping open of the same law office, the displaying of the same signs upon the windows and at the entrance thereof, the use of the same stationery and the sending of the same through the mails, the permitting of his name to be published in a telephone and in a city directory, by an attorney, exactly the same as he had done before the order of suspension from practice, necessarily brings him into direct antagonism of the order. So far as the public are concerned, the invitation to visit the office and consult the attorney remains unchanged, and the order of the court, if known to them, would be seen to be of no avail. To the other members of the bar, who necessarily know of the order, his conduct inevitably must be regarded as a reflection upon the dignity and authority of the court making the order. So far as the court itself is concerned, while always carefully and sparingly exercising the high and more or less arbitrary power of disbarment or suspension of an attorney, when once an order is made, it owes it to itself, the members of the bar, and the public, to see that the order is fully and fairly obeyed and to punish for its violation. That such acts as the respondents are shown to have committed are a contempt of the court, see Re Maximilian L. Lizotte, 32 R. I. 386, 79 Atl. 960, 35 L. R. A. (N. S.) 794; State v. Richardson, 125 La. 644, 51 South, 673; 2. R. C. L. Attys. at Law, § 203. It follows that both of the respondents must be held guilty of contempt of this court.

[2] The respondent Marron is alone concerned with the second question above stated. Before considering that question it may be stated that it appears that respondent Marron is clearly guilty of the violation of the order of suspension in causing to be prepared the pleadings, affi-

davit, and bond in the attachment proceeding heretofore mentioned. He did indirectly what he was forbidden to do directly, viz. practice law in the district court. No matter how urgent haste may have been, the fact remains that respondent was debarred by the order from doing the acts which he did. There were many other attorneys in Albuquerque to whom the business might have been intrusted if neither of the two attorneys desired could be secured. Respondent also practiced law in the probate court, and this brings us to a consideration of the second question. We do not understand counsel for respondent to contend that this court has not power to suspend or disbar from practice in the inferior courts, but he contends that, in view of the provisions of the statute, the order in this case did not effectuate that result. The argument is based upon the provisions of section 352, Code 1915, which are as follows:

"No person can practice in any of the courts of this state except probate courts and courts of justices of the peace, nor can any person commence, conduct or defend any action or proceeding in any of said courts unless he shall first have obtained a temporary license as herein provided, or shall have been granted a certificate of admission to the bar under the provisions of this chapter, and any person violating the provisions of this section is guilty of contempt of court."

It is argued that inasmuch as the right to practice law in the probate court and courts of the justices of the peace is not derived from any order of admission to practice by this court, an order of suspension from practice by this court must necessarily refer to the practice in those courts where an order of admission is necessary, viz., the Supreme and district courts. The argument is faulty. Section 374, Code 1915, defines the effect of suspension and disbarment to be to deprive the attorney of the right to appear in "any of the courts of this state." It requires construction to narrow the meaning of the words "any of the courts" so as to include only this court and the district courts. And there is no reason for so narrowing the definition of the words. If an attorney has been guilty of conduct requiring in the judgment of the court, his suspension or disbarment from practice in this and the district courts, the disquali-

fication causing the suspension or disbarment likewise and to the same degree affects his fitness to practice in the probate or other inferior courts, where often some of the most important matters ever coming before courts are heard. Nor are we constrained by rules of statutory construction to so narrow the meaning of the words. The mere fact that practitioners in probate courts and courts of the justice of the peace require no order of admission to practice is of no controlling force in the construction of the words of the statute. If, after an attorney has been elected into a special class among the citizens, possessed of many high privileges and prerogatives, he is found wanting and is expelled, either temporarily or permanently, from such class, it is not only competent, but the part of wisdom, we think, for the Legislature to provide, as we hold it has done, that he shall also lose the right possessed by the unlicensed citizens, viz. to practice in the inferior courts.

It may be stated in passing that a decision of this question is not necessary to a decision of the case and makes no difference in the result reached; but, as it is presented and is properly to be decided, we have considered the same.

It thus appears that respondents are guilty of contempt of this court and it remains to fix their punishment. In approaching such a subject the court does so with great caution, fully realizing the arbitrary nature of the power exercised, and the inability of the respondents to have the action reviewed, thus requiring the court, in common justice, to take care lest injustice be done.

In the first place it is to be observed that both respondents disclaim any intent to violate the order of suspension. This disclaimer is entitled to consideration by the court, and under many circumstances might so mitigate the offense as to require no more punishment than a reprimand. They both allege that they took counsel as to their rights under the order and were advised that their course of conduct was proper. This fact reflects upon the degree of punishment required, but has no effect in relieving respondents of the contempt itself. State v. Richardson, 125 La. 644, 51 South. 673. On the other hand, there is something in the conduct of respondents which smacks of contumacy.

State ex rel Patton, Atty. Gen. v. Marron, 22 N. M. 632.

They are attorneys of great learning and ability and wide experience, and are among the leaders of the bar of the state. It is difficult for the court to convict them of ignorance of the law and of the fact that holding themselves out as attorneys the same as before the order was a direct contempt of the court making the order. Evidence of complete submission to the letter and spirit of the order and a willingness to pay the penalty heretofore imposed seems to be lacking. It therefore becomes the unpleasant duty of the court to impose punishment of a substantial character.

The judgment of the court is that each of the respondents pay a fine to the state of New Mexico in the sum of $500, and that each stands committed until his fine is paid.

PARKER, J., concurs.

## DISSENTING OPINION.

ROBERTS, J. (dissenting). The state, on the relation of its Attorney General, instituted separate proceedings against each of the above named respondents for the purpose of punishing them for contempt of court. As the charges against each respondent are predicated upon a violation of the same order and the facts are somewhat identical, I will treat the two cases in one opinion. The respondents were, prior to the 23d day of September, 1916, members of the bar of this state, regularly admitted to the practice of the law in this court, and were practicing their profession in the city of Albuquerque. They were partners in the practice of the law. Upon the date above mentioned, by order of this court, they were suspended "from practice in the courts of this state for the full period of one year." The information filed in these cases charges that such attorneys have violated the order of the court, and that they have practiced law in violation of the same. As to both respondents it is charged that after the order of suspension was entered they continued to maintain law offices in the city of Albuquerque, and by signs upon the doors and windows thereof and by printed letter heads held themselves out to the public as practicing attorneys; further, that each of said respondents had, from time to time, advised former clients and others as to questions of law relating to various

matters submitted to them. As to the respondent Marron it is charged that in the month of October, 1916, he did unlawfully, willfully, and knowingly violate and disobey the said order of the court, and did practice law in this:

"That he appeared for, advised and represented the Gallup State Bank in the matter of foreclosure proceedings in settlement of a certain chattel mortgage which said bank held against the Navajo Live Stock & Trading Company, and charged and collected from said bank an attorney's fee of $250 for such services rendered."

In paragraph 4 it is charged that said Marron, on or about the 19th day of October, 1916, in said county of Bernalillo, unlawfully, willfully, and knowingly violated and disobeyed the said order and judgment, and did practice law, in that he prepared, or caused to be prepared, in his office in the city of Albuquerque, a complaint and affidavit for attachment and bond in attachment, which was thereafter filed in the district court of Bernalillo county in an action entitled, "State National Bank v. F. J. Dye;" that the name of attorney for plaintiff appearing upon the files of the record in said case was William A. Keleher, but that in truth and in fact the said Owen N. Marron was attorney for plaintiff in said cause.

The tenth paragraph charges that said Marron, in the months of October, November and December, 1916, in the city of Albuquerque, in the county of Bernalillo, state of New Mexico, unlawfully, willfully, and knowingly violated and disobeyed said order and judgment, and did practice law in this, that he represented one Roy McDonald, as administrator of the estate of A. J. Hawley, deceased, in the probate court of Bernalillo county, N. M., with reference to the preparation of papers, pleadings, and orders relative to said estate.

Paragraph 5, 6, 7, 8, and 9 of the information were, upon leave of the court, dismissed by the Attorney General; hence need not be referred to here.

By the fourth paragraph of the information against Wood, it is charged that said Wood, on the 7th day of December, 1916, in the county of Bernalillo, violated said

order, in that he then and there drew a certain mortgage contract for one W. H. Chrisman, and advised the said Crisman upon questions of a legal nature, and did then and there charge a fee of $10 for such service rendered.

By the fifth paragraph it is charged that said Wood, on the 18th day of October, 1916, in the town of Bluewater, county of Valencia, violated said order, in that he then and there appeared for, advised and represented, certain inhabitants of the Bluewater Irrigation District, at a hearing before the state engineer of the state of New Mexico, and at such hearing did examine and cross-examine various witnesses and did interpose objections to the evidence introduced, etc.

By the sixth paragraph it is charged that said Wood, on the 30th day of September, 1916, in the county of Bernalillo, violated said order, in that he examined a certain abstract of title for the State National Bank and rendered a legal opinion thereon, and charged said State Bank a fee for such services, and then and there advised said bank and its officers upon questions of a legal nature, and that upon other occasions said Wood rendered legal services for said bank.

By the seventh paragraph it is charged that on the 24th day of January, 1914, in the county of Bernalillo, said Wood examined a certain abstract of title for the State National Bank and rendered a legal opinion thereon in the matter of title in which O. Kelly Knight and another were interested.

To these informations respondents answered the accusation generally, as follows:

"Answering generally the said information and each and several of the charges therein contained, this defendant respectfully shows to the court that it is and was at all times his understanding and honest belief that the order of suspension made by the court herein in accordance with its terms and with the provisions of the statute then in effect only revoked the license that had previously been issued to him to practice in the courts of the state of New Mexico during the period of such suspension, and that the said order did not deprive him of any of the rights or privileges possessed or enjoyed generally by citizens of the state of New Mexico, and only suspended such additional privileges not enjoyed by cit-

izens generally as were conferred upon him by the order admitting him to practice as an attorney and counselor at law; that it was the understanding and the honest belief of this defendant that the effect of the order of suspension was to forbid him during the period prescribed from appearing or representing clients or conducting any proceedings for clients in any of the district courts or in the Supreme Court of the state, but that it left this defendant free to draw contracts, conveyances, make collections, and advise in matters not connected with the conduct of suits in the said court, to act as director, manager, or agent of corporations, etc., to the same extent that persons not admitted to practice law could and might lawfully do; that the language used in one part of the opinion and order suspending this defendant expressly referring to the district courts and the Supreme Court as the ones from which he was suspended from practicing, taken in connection with the express provisions of the statute forbidding persons not admitted to practice law from practicing in any court except the probate court and justice's courts of this state, and the further provision that the effect of the order of suspension was to forbid this defendant from appearing in the courts were plain and definite, and was the measure of the effect of the order of suspension; that this defendant consulted with his counsel Mr. A. B. Renehan, a counselor of this court, as to his rights and duties under said order, and was advised by said counsel, who had full knowledge of all the facts, that the measure, effect, and construction of the order was as above stated; that it still left this defendant an attorney at law, but merely suspended his right to appear for or represent clients, either directly or indirectly, in proceedings in the district courts or the Supreme Court of the state, and had no further effect, and left him meantime free to do anything which a person not admitted to the bar might lawfully do; that under the facts and circumstances of this case, and as the law stood at the time of such suspension, this defendant was not required to change the signs or lettering on his offices or make any change in his office stationery. That this defendant annexes hereto and returns as a part of this answer the affidavit of Mr. Renehan as to the advice so given. And this defendant further shows that whatever was done as hereinafter admitted, set forth, and alleged was done by this defendant openly and in good faith, and in the full and honest belief that in so doing he was not violating or disobeying the order of suspension, and without any purpose or intent upon his part to disobey or violate the judgment or order of this court suspending him."

As to the charge contained in both informations, as to the keeping open of law offices, displaying signs and using printed letter heads, and carrying their names in telephone directories, both respondents answered in substantially the

State ex rel Patton, Atty. Gen. v. Marron, 22 N. M. 632.

same language, which was as follows (quoting from the answer filed by Marron) :

"Answering paragraph 2 of the said information this defendant denies that since the 23d day of September, 1916, he did, knowingly or otherwise, violate and disobey the said order and judgment of this court, and denies that, except as hereinafter stated, he has kept open a law office or habitually advised with clients, or habitually rendered legal service since said date, or that the words 'law office' has been displayed on the windows or entrance to the said offices at all times since said date, or that envelopes printed with the return card bearing the words 'Marron & Wood, Attorneys and Counselors,' were at any time used, or authorized to be used, by this defendant, or that this defendant caused to be inserted in the telephone directory or the city directory of the city of Albuquerque, the name 'Marron & Wood, Attys.' or 'Marron & Wood, Attorneys.'

"And further answering the matters and things stated in paragraph 2 of said information, this defendant respectfully states to the court that the facts concerning said matters are as follows, and not otherwise:

"That at and for many years prior to the time of such suspension, the firm of Marron & Wood, composed of this defendant and Francis E. Wood, had and maintained in the State National Bank Building in the city of Albuquerque, N. M., an office for the practice of law, and also for the transaction of various other business interests which this defendant, both personally and as a partner with the said Francis E. Wood, was engaged in conducting. That the windows in said offices and a signboard at the entrance to said offices contained the words 'Law Offices,' and in the said offices were kept a law library, typewriters, desks, furniture, etc.

"That this defendant is, and during all the times herein mentioned was, an officer and director in several corporations doing business at Albuquerque and elsewhere, and is and has been interested in a number of business enterprises and undertakings in and about Albuquerque and in other parts of the state, some of which are his personal matters and others are enterprises and affairs of Marron & Wood, in which he is a partner, making it necessary that he and his said firm have and maintain an office for the transaction of such businesses and enterprises and to care for said business and interests, and that for such purposes it has been necessary to maintain and keep a stenographer and typewriters, desk, stationery, and such other similar furniture and fixtures, and that for such purposes he has found it necessary to and has at all times during said period and during business hours as his health would permit, kept the said office open and accessible to the public and those with whom he was doing business.

"That prior to the 23d day of September, 1916, he had provided a quantity of letter heads which contained engraved at the head 'Marron & Wood, Attorneys and Counselors, State

National Bank Building, Albuquerque, New Mexico, Owen N. Marron, Francis E. Wood,' and he continued to use the said letter heads as thus engraved in the transaction of his various matters of business down to the 10th day of March, 1917. That upon said 10th day of March, 1917, when the act amending sections 335, 340,. 351, 352, became the law of the state of New Mexico (Laws 1917, c. 48), he directed and caused the words stating or indicating that the said offices were law offices to be removed from the windows upon said offices and from the entrance thereto, and no such words have been used or appeared thereon since, and he immediately discontinued, and ever since has discontinued, to' use the said office stationery, and has not used any such stationery since the said 10th day of March, 1917.

"And this defendant further shows that he has at all times had a telephone in his office, and for a number of years the name of Marron & Wood has appeared therein in manner and form as stated in the information. That this defendant gave no thought or attention to the manner in which the name appeared therein, or that the word 'Attys.' was after the same. That the said telephone company issues a new directory periodically without consulting its patrons, and issued a new telephone directory in January, 1917, with a list of its patrons, and without suggestion or direction of this defendant continued and placed therein the name as it appears in said information, and that this defendant gave no order or direction concerning the same, and gave no thought whatever to the said directory, and first became aware of the fact that it had been renewed and so appeared in the directory when his attention was called thereto in the charges filed therein.

"That in like manner a list or directory of the inhabitants of the city of Albuquerque has been annually compiled and issued by certain publishers,. and, the designation charged in the complaint as appearing in Worley's Albuquerque City Directory has appeared, therein for several years and was repeated by the publishers thereof in the January, 1917, edition of said directory without any order, suggestion, or the knowledge of this defendant, and he had not in any manner thought of the style in which the name was inserted in said directory until his attention was called thereto by the filing of the charges herein.

"This defendant in connection with his other business interests has advised with persons who came to him and sought advice upon questions unconnected with any suit or legal proceeding, in the full understanding and belief that he had a lawful and constitutional right so to do, and that he was not prohibited or forbidden by said judgment of suspension from giving such advice or discussing questions of law and giving his opinion thereon to his fellow directors in the corporations in which he has been and is interested, or to others seeking such advice, but this defendant denies that he has at any time, either directly or indirectly, appeared or practiced in either the district courts or the Supreme Court of the state of New Mexico, or directly or indirectly taken any steps in

any proceedings pending or contemplated therein or in any of said courts."

"Except as above expressly stated and admitted this defendant denies each and every allegation in paragraph numbered 2 in said petition."

Respondent Marron, answering as to the charge relative to the services performed for the Gallup State Bank, alleged that he was the president of the said bank, and that prior to the month of December, said bank held a chattel mortgage upon the property of the Navajo Live Stock & Trading Company as collateral to some other notes and indebtedness held and owned by the said bank, which indebtedness was for a large sum and it was a very important matter to the bank that said collateral security and mortgage be carefully handled and enforced for its protection; that the Navajo Live Stock & Trading Company became involved in financial difficulties and was of doubtful solvency, and the bank's interests therein became jeopardized, and the respondent, learing of such condition, went to Gallup and took charge of and looked after the interests of the bank in that connection in his capacity as an officer and as president of the said bank; that defendant, together with other officers of the bank, procured the services of one Denny, an attorney at law of Gallup, to assist therein and proceeded to enforce the said mortgage out of court by taking possession of the property covered thereby, and prepared to sell the same under the power contained in the mortgage; that through the efforts of the respondent and with the assistance of the said attorney the amount due to the bank was collected and paid in full without resorting to any proceedings in court; that he had no regular salary as president of the bank, but it was understood that for any extraordinary services rendered by him as such president he would be compensated, and that respondent had been nearly a week at Gallup attending to such matters and was paid by the state bank for his services in the sum of $250.

Answering the fourth paragraph, respondent said:

"That on or about the 19th day of October, 1916, the officers and directors of the State National Bank of Albuquerque, in which this defendant is one of the directors, instructed this

defendant to take measures to enforce the note held by the bank against one F. J. Dye and to have proceedings instituted to procure a writ of attachment against Dye in enforcing the note and to procure an attorney to institute and conduct said proceedings on behalf of the bank. That this defendant turned the note over to his stenographer, instructed her to procure the services of either Mr. George S. Klock or Mr. Wm. A. Keleher to act for the bank. That his stenographer afterwards reported that Mr. Klock was out of town and Mr. Keleher engaged in court, and haste being necessary to protect the interests of the bank, this defendant directed his stenographer to copy a form used in an attachment suit, deliver it to Mr. Keleher, and assist him in getting up the papers for the attachment. That this defendant's stenographer did so assist Mr. Keleher in the getting out and preparation of the papers, which were thereupon turned over to and filed by Mr. Keleher, who had, and has since had, entire charge, direction, and control of said suit, and this defendant never was, directly or indirectly, attorney for the plaintiff in that cause, and the said Keleher was not appearing for or instead of this defendant, but was appearing for and as the attorney for the State National Bank, under the instructions from the bank communicated as aforesaid, and not otherwise, and that neither in the cause mentioned nor in any other cause has the said Wm. A. Keleher appeared for or in lieu of or as the dummy or representative of this defendant in any manner whatsoever.

"That some matters which were in charge of this defendant's firm at the time of the entry of the order of suspension were turned over to Mr. Keleher at the direction and with the consent of the clients, and in turning them over this defendant gave to the said Keleher full information as to the proceedings that had been had in the causes, the theory and purpose upon which the same had been conducted, and their ideas as to the best methods of continuing said causes, to the end that their client's rights should be jeopardized as little as possible by the change, but this defendant has never had any interest in or participated, directly or indirectly, in the fees for the further conduct of the said cases, nor has his connection therewith been other than as above stated, nor has he nor said firm received or charged any fee therein since the order of suspension."

The answer to paragraph 10 was as follows:

"Answering the paragraph numbered 10 of the information, this defendant states that during the year 1915 and prior to September, 1916, he had represented the estate of A. J. Hawley and Roy McDonald as administrator of the said estate, and had performed such services in connection with the said estate and the management and conduct thereof which said services performed prior to September, 1916, were of the value of more than $35. That subsequent to September, 1916, at the request of the said Roy McDonald, and to save expense, he

State ex rel Patton, Atty. Gen. v. Marron, 22 N. M. 632.

assisted in the preparation of his final account as administra-
tor and in drawing certain orders in the probate court to close
the account; that the estate was a small one, heavily in-
debted, and that this defendant made no claim for any com-
pensation for the services performed after September, 1916.
That the said services were rendered for McDonald in the full
and honest belief of this defendant that under the provisions
of section —, of the Compiled Laws he was not barred or for-
bidden by the order of suspension from appearing or repre-
senting persons in the probate court."

Respondent Wood answered the fourth, fifth and sixth
paragraphs of the charge against him as follows:

"(4)    Answering specification numbered 4, of said inform-
ation, this defendant admits that in the early part of Decem-
ber, 1916, the particular date he does not recollect, at the in-
stance of W. H. Chrisman and other directors of a corpora-
tion known as the Staplin Mercantile Company he drew a
contract or agreement in the nature of a mortgage between
Chrisman and the said company, advising them that the mort-
gage and contract as thus drawn would safeguard the inter-
ests of both and carry out the purpose they had in mind, and
charged and received a fee of $10 for drawing the papers,
which said contract or mortgage had nothing to do, directly
or indirectly, with any suit or legal proceedings pending or
contemplated; but this defendant denies that in so doing he
did willfully or knowingly violate or disobey the order or
judgment of the court and this defendant shows to the court
that he drew said papers and charged the said sum for draw-
ing the same in the honest and sincere belief that he had a
lawful right to do so and that said act was not forbidden by or
in violation of the judgment of suspension aforesaid.

"(5)    Answering paragraph 5 of the said information, this
defendant admits that on or about the 18th day of October,
1916, at the town of Bluewater, Valencia county, N. M., he ap-
peared for and represented certain inhabitants of the Blue-
water irrigation district at a hearing before the state engi-
neer of the state of New Mexico, and examined and cross-ex-
amined various witnesses and made objections to evidence of-
fered, etc., before Mr. Fitzpatrick, an agent or representative
of the state engineer, in proceedings before the engineer seek-
ing to procure and retain certain water rights of the said in-
habitants as against the claims of other parties thereto be-
fore the state engineer, and he expects the parties in whose
behalf he acted to pay him for such services, and this defend-
ant denies that such conduct was unlawful, or that in so do-
ing he willfully or knowingly violated or disobeyed the judg-
ment of this court suspending him from practice, but, on the
contrary, alleges that he so represented the parties before the
state engineer and his representative, openly and in good faith
and in the honest belief that he had a right to do so, and that

said conduct was not forbidden by or in violation of the order of suspension.

"(6)    Answering paragraph numbered 6 of said cause, this defendant admits that some time in the fall of 1916, and subsequent to the order of suspension at the request of some one connected with the State National Bank, he examined an abstract of title to certain real property and the records of Bernalillo county with reference to said title, and reported on conditions of the title as so found, but denies that he charged or received any fee therefor.

"This defendant further admits that upon three of four separate occasions since that time he has answered questions of a legal nature for different officers of said bank relating to the affairs of said bank, in which this defendant is interested as a stockholder, but denies that he has charged or been paid any fee therefor."

To each of said answers a demurrer was filed by the state upon the ground that the matter set forth in each paragraph thereof did not constitute a sufficient defense to the charges in the information. The court, without an opinion, entered an order sustaining the demurrer of the state, and the respondents each stating that they had no further defense to the charge, reiterated their prior statement as to the unintentional violation of the orders of the court, and submitted themselves to the court for its judgment in the premises.

Upon a further investigation as to the law, I have become convinced that we committed an error in sustaining the demurrer to the answers filed by the respondents, except possibly as to that paragraph of the answer which admitted the keeping open of a law office in the city of Albuquerque, with the names of the respondents on the windows and doors thereof, coupled with the words "Law Office," and the use by the respondents of letter heads and stationery bearing their names and the information that they were attorneys at law.

As to the other charges I will proceed to state my reasons for the view which I entertain that the demurrer should have been overruled.

By chapter 53, Laws 1909, the Legislature of the state passed an act to provide qualifications for admission to the bar, created a territorial board of bar examiners, and established the procedure for the disbarment of attorneys.

JANUARY TERM, 1917.    651

State ex rel Patton, Atty. Gen. v. Marron, 22 N. M. 632.

By section 26 of said act (section 352, Code 1915), it was provided:

"No person can practice in any of the courts of this state except probate courts and courts of justices of the peace, nor can any person commence, conduct or defend any action or proceeding in any of said courts unless he shall first have obtained a temporary license as herein provided, or shall have been granted a certificate of admission to the bar under the provisions of this chapter, and any person violating the provisions of this section is guilty of contempt of court."

By this section it will be seen that it was not the intention of the Legislature to prescribe any qualifications or require a person to be a member of the bar in order to practice before the probate courts or in the courts of the justices of the peace. This chapter provided a procedure for disbarment or suspension of attorneys, and undertook to state the grounds justifying the disbarment. By section 48 of such chapter (section 374, Code 1915) it was provided:

"Every judgment or order of disbarment or suspension made in pursuance of this chapter by the Supreme Court of this state, shall operate while it continues in force to deny the party against whom the same is rendered the right to appear in any of the courts of this state; but an attorney at law, who by such order or judgment of the Supreme Court has been disbarred from practice or suspended for a longer period than two years for any offense not indictable, on application to the Supreme Court may be reinstated as such attorney in the discretion of the court at any time after two years from the date of such judgment."

The order of the court in the original preceding for the disbarment of the respondents was as follows:

"It is further considered and adjudged by the court that the said respondents, Owen N. Marron and Francis E. Wood, and each of them, as to the seventh and eighth specifications of the complaint, be and they hereby are suspended from practice in the courts of this state for the full period of one year."

In the argument on the demurrers it was contended by the Attorney General that the above order not only depriv-

ed the respondents of the right to appear and practice ·in the Supreme Court and the district courts of the state, but that it likewise deprived them of their right to appear in the probate courts and the courts of the justices of the peace or before administrative boards or officers, or to examine and pass upon abstracts of title and to draw contracts, etc. From a reading of the statutes, above quoted, it is apparent to me that the last section, which provides that every judgment or order for disbarment or suspension shall operate while it continues in force to deny the party against whom the same is rendered the right to appear in any of the courts of this territory, refers to the courts named by the Legislature in the prior section, viz. the Supreme Court and the district courts. I think that under the well-recognized rules of statutory construction the latter section cannot be given any broader interpretation. In justification for my interpretation of this section, I quote as follows from Sutherland on Statutory Construction, § 344:

"Therefore, it is an elementary rule of construction that all the parts of an act relating to the same subject should be considered together, and not each by itself. By such a reading and consideration of a statute its object or general intent is sought for, and the consistent auxiliary effect of each individual part. Flexible language which may be used in a restricted or extensive sense will be construed to make it consistent with the purpose of the act and the intended modes of its operation as indicated by such general intent, survey, and comparison. 'Ex antecedentibus et consequentibus fit optima interpretatio.' The order in which provisions occur in a statute is immaterial where the meaning is plain and there is not a total conflict. A later clause or provision may qualify an earlier one, and the converse is equally true."

Also from the case of Holl v. Deshler, 71 Pa. 299:

" 'Ex antecedentibus et consequentibus fit optima interpretatio' is one of the most important canons of construction. Every part of a statute should be brought into action in order to collect from the whole one uniform and consistent sense, if that may be done; or, in other words, the construction must be made upon the entire statute, and not merely upon disjointed parts of it; Broom's Legal Maxims, 513. 'It is the most natural and genuine exposition of a statute,' says Lord Coke, 'to construe one part of the statute by another part of

State ex rel Patton, Atty. Gen. v. Marron, 22 N. M. 632.

the same statute, for that best expresseth the meaning of the maker.' Col. Litt. 381a."

Certainly, when the Legislature provided only for admission to practice in the Supreme and district courts and authorized persons not admitted to the bar to practice in the inferior courts, and later stated that an order of disbarment should have the effect to deprive the offending attorney of his right to practice in all the courts of the State, it was referring to the Supreme and district courts.

This being true, we must next consider the order of the court suspending the respondents, and ascertain whether it was the intention of the court in making the order to go beyond the statute and to deprive the respondents of the right which they would have enjoyed had they never been admitted as members of the bar. In other words, we must determine whether or not it was the intention of the court, by entering the order in question, to deprive the respondents of a right which might properly be exercised by any citizen of the state, however, immoral, corrupt or incompetent he might be. It is true, the order says that respondents are suspended from practicing in the courts of the State for the period of one year, but in view of the statute which, as I have stated, is subject to the construction that it means only the Supreme and district courts, I believe the order of the court, construed in connection therewith, can reasonably only be interpreted as having the same effect, viz. the suspension of the respondents from the right to practice in the Supreme and district courts; that this is the proper construction of the order is demonstrated by a reference to the opinion of the court in the former case. There the court said:

"We find that the respondents and each of them should be suspended from further practice as attorneys at law, in this and the district courts of the state of New Mexico, for a period of one year from the date of this opinion."

It is true the court said, in dealing with another charge against Mr. Wood:

"That said Francis E. Wood be and he is hereby suspended from further practice in the courts of New Mexico as an at-

torney at law for and during the period of one year from the date hereof."

But, construing this language with the later expression by the court as to the effect of its order, it seems to me that we should hold that respondents were only suspended from practice in the Supreme and district courts of the State, and that as to the inferior courts these respondents had the same right as any other citizen of the State who had never been admitted to the bar.

Assuming, for the sake of argument, that the court would have the power to strip an attorney at law of rights and liberties which had never been conferred upon such citizens by the court, and which any citizen of the State might enjoy and exercise without being a member of the bar, should we so construe the order made in this case and thereby exercise the right to punish the respondent herein? It seems to me that this question must be answered in the negative.

In support of my contention that the suspension of the respondents did not place them in a different position than that occupied by other citizens of the State, not members of the bar, I cite the case of State v. Swan, 60 Kan. 461, 56 Pac. 750. The court said:

"The revocation of the license of Norris and his disbarment place him in the same status as if he had never been admitted to practice."

In the case of Danforth v. Egan, 23 S. D. 43, 119 N. W. 1021, 139 Am. St. Rep. 1030, 20 Ann. Cas. 418, the court said:

"As regards the effect of disbarment, the authorities are uniform that it deprives the party disbarred of every privilege to which his license had entitled him."

The disbarment or suspension of an attorney from his right to practice law is not for the purpose of punishing the suspended or disbarred member, but for the protection of the public. The court grants to a citizen the right to practice law in the Supreme and district courts. It grants

State ex rel Patton, Atty. Gen. v. Marron, 22 N. M. 632.

him nothing more. He has, without any action on the part of the Supreme Court, the right to appear before the probate court and justices of the peace, to draw contracts, examine abstracts of title, and do various other acts charged to have been done by the respondents herein. Can the court, where proceedings are instituted to disbar or suspend attorneys, take from such attorneys rights which it has not granted to them, and which were enjoyed before admission to the bar? I claim it cannot. If it can reach out, in proceedings for disbarment from practice, and strip a man of the right to do those things which he could lawfully do without admission in the first instance, it could, with equal propriety, strip him of any or all other rights enjoyed by the ordinary citizen, such, for example, as the right to buy and sell property, to engage in business enterprises, to vote or to hold office. In disbarment proceedings the court has only the power to take from the offending attorney such rights and powers as the court has conferred upon him. In other words, to take from him a privilege which it has granted him.

If the order made in the original disbarment proceedings is as broad as is contended by the Attorney General, it would be void in so far as it attempted to take from these respondents the right to represent others in proceedings before administrative officers or boards and in courts inferior to the district courts; hence they would not be subject to punishment for contempt for having violated the same in that regard.

Certainly if the order heretofore made was ambiguous or uncertain and was susceptible of two constructions, under one of which the respondents would be guilty and subject to punishment and under the other innocent of any intentional disrespect for the court or violation of its order, that construction should be adopted by the court which would acquit the respondents of contemptuous conduct toward the court.

The order or decree alleged to have been violated must be definite and certain, and a respondent will not be held in contempt for alleged violation of an order wanting in these essential respects, especially where the violation

claimed pertains to the indefinite and uncertain portion of the order claimed to have been violated. 9 Cyc. 11; Zeigfield v. Norworth, 148 App. Div. 185, 133 N. Y. Supp. 208; Ketchum v. Edwards, 153 N. Y. 534, 47 N. E. 918; Youker v. Youker, 122 App. Div. 901, 106 N. Y. Supp. 810; Coffin v. Coffin, 161 App. Div. 215, 146 N. Y. Supp. 565; Moore v. Smith, 70 App. Div. 614, 74 N. Y. Supp. 1089; Ross v. Butler, 57 Hun. 110, 10 N. Y. Supp. 444; German Sav. Bank v. Habel, 80 N. Y. 273; Privett v. Pressley, 62 Ind. 491; Riley v. Whitcher, 18 Ind. 458; Birchett v. Bolling, 5 Munf. (Va.) 442; 456; Bauer v. Byrd, 245 Pa. 441, 91 Atl. 850. In 9 Cyc. at page 11, it is said:

"In order to be valid and binding the order must be certain or definite in its terms. The charge of contempt cannot be established for failure to comply with uncertain or indefinite orders, judgments, or mandates."

In Ketchum v. Edwards, supra, the court said:

"As punishment for contempt involves, or may involve, not only loss of property, but liberty, it is a reasonable requirement that the mandate alleged to be violated should be clearly expressed; and, when applied to the act complained of, it should appear with reasonable certainty that it had been violated."

"If there is one thing which is well settled in reference to the power of the court to enforce by attachment its judgment or decree, it is that such judgment or decree shall be definite and certain." Ross v. Butler, supra.

In Bauer v. Byrd, supra, the Supreme Court of Pennsylvania held that, while it was respondent's duty to comply in good faith with the decrees of the court, yet where those decrees were indefinite and conflicting, he would not be adjudged in contempt for an alleged violation of such decrees.

From our order and determination in the premises these respondents are without remedy; they can only submit to our judgment. This being true, it seems to me that we should give them the benefit of any doubtful language con-

State ex rel Patton, Atty. Gen. v. Marron, 22 N. M. 632.

tained in the order and accept their sworn statement that they honestly so construed it and intended no disrespect towards the court, by the various matters charged against them, except in the second paragraph of the information, which will be referred to hereafter.

Even if we should assume that the order of the court was as broad as is contended for by the State and had the effect of suspending the respondents from the right to practice in any of the courts of the State, there is no showing that the respondent Wood has violated the order in this regard. There is no charge contained in the information that he has appeared or practiced before any court in the State. It is true there is an allegation to the effect that he appeared before the state engineer, an administrative officer of the State, in the matter of an application for water rights. It is argued that the matter in which he appeared before the State engineer could go, by appeal, from that officer, into one of the district courts of the State, and therefore he appeared before an administrative officer in a matter which might, by appeal, go to a district court, and that he was, in effect, "practicing law in the courts of the State." This is answered by the following quotations from the case of Hall v. Sawyer, 47 Barb. (N. Y.) 116, which reads as follows:

"While all this is conceded to the position and argument of the plaintiff, I am not able to see its application to this case. The act supposed to be in violation of the law, as we have laid it down, was not performed in any court of record; it was performed before the county court obtained jurisdiction of the action. No act is shown to have been performed by Smith in the county court. Jurisdiction is obtained by the county court by the filing of the return by the justice. Any person may appear in a justice's court as attorney for another, except the constable who served the original or jury process. The signing of the notice of appeal is the only act that is objected to. This notice has the defendant's name attached to it, by W. J. Smith, his attorney. It is to be presumed, therefore, that no other act was performed by attorney before the filing of the return. An authorized attorney did appear for the defendant after the action was in the county court. The notice, so signed and complained of, is entitled in the justice's court, and when it was so signed, there was no action in the county court. Without an affidavit to explain the authority for signing this notice, it was an act

that any person might do for another by request, whether he had been admitted by the court to practice in the courts of record or not."

This quotation, it seems to me, disposes likewise of the contention that respondent Wood violated the order by drawing the contract between Chrisman and the Mercantile Company, and examining abstracts and passing upon titles. These matters are done, I presume, every day by persons not lawyers nor possessed of any legal qualifications whatever. In this connection I cite the case of Dunlap v. Lebus, 112 Ky. 237, 65 S. W. 441, where one, not an attorney at law, represented another in securing a reduction of a tax claim. The court held that such party was entitled to recover the agreed compensation as such services could be performed by a layman as well as a lawyer.

Relative to the charges against respondent Marron. I think it would have been competent for any person, not a member of the bar, to have done the things charged against said respondent relative to the chattel mortgage transaction for the bank at Gallup. Further than this, the respondent was president of the bank, and it seems to me that he could as such president, without violating the order of the court, have taken all the steps which he did take to collect the money due the bank under the mortgage. In doing this he did not even appear in any of the inferior courts of the State and simply, as agent of the bank, took possession of the property. The fact that the bank compensated him for his services, it seems to me, does not concern the court, as such compensation cannot be held to have been paid him as an attorney at law, but rather as president of the bank for the time and services which he had expended in its behalf as its president, not as a lawyer.

As to the charge that he practiced law in connection with the attachment suit on behalf of the State National Bank v. Dye, this, it seems to me, is a very trivial matter, not even justifying the censure of the court. He was a director of the bank, and as such director, together with his fellow directors, took the necessary steps to protect the bank's interests and to procure some attorney to institute attach-

ment proceedings. Marron had been a practicing lawyer for many years, and all he did in the premises was to direct the stenographer employed by the firm to procure one of two lawyers to institute the proceedings. One lawyer being out of town and the other engaged in court in the trial of a case, in order to expedite the matter he directed the stenographer to copy, from a form used by the firm in previous litigation, a complaint in attachment, in order that it might be ready for the lawyer employed to represent the bank to file when he should be at liberty to do so. This act, I do not believe, could be reasonably construed as the practice of law, for it might have been done by any layman in possession of a form used in such cases.

\s to his appearance in the probate court. I believe, under the order of the court, he had a right to do so; but if it be assumed that the order was as broad as is contended for by the attorney general, I think Mr. Marron, in doing the acts in this regard, has clearly shown that he had no intent to violate the order of the court. For his services rendered he made no charge, and simply drew the final report for the administrator whom he had previously represented, in order to save the money for an insolvent estate. He did not even appear in the probate court. I think any citizen could have prepared the final report for the administrator, and that under the circumstances Mr. Marron could properly do so.

For the reasons stated, I think the court should have overruled the demurrer of the State as to these paragraphs of the answer.

As to that paragraph of the answer which set forth the fact that respondent had maintained an office in the city of Albuquerque, with their names on the doors and windows thereof, and followed by the words "Law Offices" and the use of letter heads and stationery bearing their names, coupled with the words "Attorney at Law," etc., I do not believe that the respondents were justified in continuing to hold themselves out to the public in this manner as attorneys at law. They have, however, disclaimed any intention by so doing to violate the order of the court or to show any disrespect to the court. They both state that

since the enactment of chapter 48, Laws 1917, which prohibits persons not licensed to practice law from holding themselves out as attorneys at law, they removed the words "Law Office" from their doors and windows, and ceased to use letter heads as stated. In a note to the case of O'Flinn v. State of Miss. 9 L. R. A. (N.S.) 1119, dealing with the effect of denial under oath to purge one of criminal contempt, the writer of the note says:

"The weight of authority may be said to hold that in cases of constructive or indirect criminal contempt, if the contempt consists of acts or statement which are ambiguous in character, and which are capable of two constructions, one of which would amount to contempt, and the other not, so that the intent of the party himself becomes the material question of inquiry, then a denial on oath by such party of an intent to show disrespect to the court is conclusive, and cannot be disputed."

Several cases are cited so holding. Here respondents both say that they intended no disrespect to the court by the use of letter heads and their failure to remove the signs from their doors and windows, and believed, further, that it was no violation of the order of the court to maintain such signs or to use such stationery.

As stated, I do not believe respondents should have acted as they did, but as they have disclaimed any intent to violate the order of the court or treat it with disrespect, and both say they will strictly refrain in the future from such acts, I am not willing to give my assent to an order requiring them to pay a heavy fine.

In justification of my views, that such suspended attorneys had no right to hold themselves out to the public as licensed attorneys, after the order of suspension was entered, I cite the case of In Re Bailey, 50 Mont. 365, 146 Pac. 1101, Ann. Cas. 1917B, 1198. In this case one who had never been admitted to the bar opened a law office, and by printed signs, cards, letter heads, etc., held himself out to the world as a practicing attorney, and accepted cases for clients and appeared in the courts of record as an attorney at law. It is true in that state there was a statute specifically conferring upon the Supreme Court the power

to punish, as for contempt, such acts and conduct. I think however, in the absence of such a statute, the court would have the power to punish as for contempt one holding himself out to the world as an attorney at law, for by so doing he necessarily conveys the information that he is possessed of a license issued by this court, authorizing him to act as an attorney at law. If not licensed, he has no such right, and only by virtue of a license could he appear for and represent litigants in the Supreme and district courts. In·the case cited, where the acts were much more flagrant, and there was no attempt to palliate or excuse, the court only imposed a fine of $250 upon the offending party.

In the present case I feel satisfied that a reprimand would accomplish the ends sought, viz. future compliance, in good faith, with the order of the court, and that the ends of justice will not warrant the mulcting of respondents with a heavy fine.

For the foregoing reasons I cannot concur in the majority opinion.