**BOWLES v. LAWS et al.**

No. 5181.

Court of Appeals of District of Columbia.
Argued Oct. 9, 1930.
Decided Dec. 1, 1930.

Petition for Rehearing Denied Dec. 20, 1930.

T. M. Wampler, of Washington, D. C., for appellant.

C. F. R. Ogilby, Roger J. Whiteford, Michael M. Doyle, and Bolitha J. Laws, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, Associate Justice, and WHEAT, Chief Justice of the Supreme Court of the District of Columbia.

ROBB, Associate Justice.

Appeal from an order of the Supreme Court of the District in General Term, six justices sitting, adjudging appellant in contempt of court and sentencing him to pay a fine of $100, or, in default of payment, to be committed to jail for thirty days.

On July 2, 1921, appellant was disbarred and expelled as a member of the bar of the court below. The order of disbarment was based upon charges filed by the grievance committee of the court that appellant had been indicted, tried, convicted, and sentenced to punishment in the penitentiary for conspiring to conceal certain stolen stock certificates and to defraud the owners thereof, in violation of the federal Penal Code. No appeal was taken from the order of disbarment. An appeal was prosecuted to this court from the conviction in the conspiracy case, and on February 5, 1924, the judgment was affirmed. Arnstein et al. v. United States, 54 App. D. C. 199, 296 F. 946. A petition for writ of error to the Supreme Court of the United States was denied on February 16, 1924; Arnstein et al. v. United States, 264 U. S. 595, 44 S. Ct. 454, 68 L. Ed. 867. Appellant served his term of imprisonment and was discharged on December 22, 1925.

On August 13, 1927, appellant wrote and sent a letter to C. Privitera on stationery headed, "Norman S. Bowles, Attorney at Law, 501 Insurance Building, Washington, D. C.," and in which he stated that the Novelty Advertising Company had instructed him to file suit; that he would do so immediately, unless a certain obligation in the sum of $24 was paid by a stated time.

On December 2, 1927, he wrote and sent a letter to Percy H. Russell Company on stationery with the same heading, in which he stated that he had been instructed by the Frank R. Porter Company to file suit against the addressee of the letter for $20,000 for breach of contract; and, after setting forth a recital of the facts upon which such suit might be instituted, concluded: "If you know of any reason why suit should not be instituted I ——— willing to hear the same otherwise I will proceed as directed."

On December 8, 1927, appellant wrote and sent a letter to Charles V. Imlay, Esquire, a member of the bar, on stationery with the same heading, and reading in part: "For your personal information I have filed a number of suits lately and I always associate myself with a member of the bar in good standing, this method will be followed in the Russell matter. Your client knows the facts and if you are unwilling to take the matter up with me in the capacity as an attorney in fact or in law, either or both, for Mr. Porter I will accommodate you and your client by filing the suit."

On October 13, 1928, "a full and unconditional pardon, for the purpose of restoring his civil rights" was granted appellant.

On October 24, 1928, appellant petitioned the court below to vacate its order disbarring him. The record fails to show upon what ground the petition was based or what action, if any, was taken thereon.

On December 11, 1928, the grievance committee filed a report in the court below recommending that appellant be required to show cause why he should not be adjudged in contempt by reason of having conducted himself as if he were a member of the bar of the court and for having held himself out to the public as such. A rule to show cause issued. Appellant, after his demurrer to the petition had been overruled, filed an answer "fully denying, under oath every allegation of contempt and further setting forth under oath that the respondent (appellant) never intentionally or knowingly committed any contempt," and moved the court, before taking any evidence, to dismiss the petition and rule on the answer. The motion was overruled, and an exception noted. Thereupon the grievance committee offered in evidence the letters already referred to and rested. Appellant again moved to dismiss the petition, which motion was overruled.

He then testified in his own behalf, admitting the writing of the letters, but denying that any contempt was intended.

Appellant then offered the original indictment upon which he was tried and convicted, "to show that the disbarment proceedings were void for want of jurisdiction, in that the said indictment was not the act of a Grand Jury, as the indictment showed plainly that it had been amended by the trial justice. * · * " The court refused to admit the indictment or to allow testimony regarding alleged amendment thereof.

Appellant then offered in evidence the unconditional pardon from the President "to justify the striking out the order of disbarment and to prevent the court from taking any further action, such as holding respondent in contempt." The offer was refused, and an exception noted.

There was no rebuttal; whereupon appellant moved to dismiss the petition and rule because the testimony had failed to make out a case of contempt. The motion was overruled, and appellant excepted.

The court, after stating the charges against appellant, found that he did, as charged by the grievance committee, "conduct himself as if he were a duly authorized member of the bar of this Court and to so hold himself out to the public—by presenting claims in behalf of clients and threatening to file suits as an attorney, using stationery upon which he described himself as an 'Attorney at law' "; the court concluding, "We are of the opinion that this conduct on the part of the respondent (appellant) constituted a contempt of this Court."

The first assignment of error challenges the action of the court in entering the order of disbarment based upon appellant's conviction, judgment, and sentence in the conspiracy case prior to the determination of the appeal to this court. The conviction having been subsequently affirmed, the question attempted to be raised by this assignment of error has become moot. Whitaker v. Grievance Committee, 56 App. D. C. 148, 10 F.(2d) 1013.

It is next contended that the court erred in not finding from appellant's answer, the exhibits attached thereto, and from his proof, that he had purged himself of the contempt. In Pierce v. United States, 37 App. D. C. 582, certiorari denied 223 U. S. 732, 32 S. Ct. 528, 56 L. Ed. 634, it was held that the rule of the common law permitting a person cited for contempt to acquit himself by an oath denying the charge, "so far as the Federal courts are concerned, has been completely abrogated by the Supreme Court [of the United States] in the recent case of United States v. Shipp, 203 U. S. 563, 574, 27 S. Ct. 165, 51 L. Ed. 319, 324, 8 Ann. Cas. 265." The court in the Shipp Case suggested that even now, "if the sole question were the intent of an ambiguous act," the common-law rule might apply. In the present case the acts charged and established are not ambiguous. The answer is inconsistent with those acts. Whatever ambiguity exists, therefore, resides in the answer and appellant's testimony. We are clearly of the view that the common-law rule does not apply in this case.

The third assignment of error to be considered is based upon the pardon. We do not deem it necessary to consider whether the pardon in any way affected the authority of the court in the contempt proceedings, for the reason that the pardon was not granted until after the acts constituting the contempt had occurred. The pardon embraced the criminal offense of which appellant had been convicted and did not purport to cover, neither did it cover, the contempt. But we may add that, in the Matter of ———, an Attorney, 86 N. Y. 563, where an attorney had been granted a pardon prior to the institution of disbarment proceedings, the court held that a pardon wipes out the offense against the public, but does not annul the act or affect the right of the court to punish for professional misconduct. The court, after an exhaustive review of the authorities, said: "We have cited these instances to maintain, by authority, our position that, though the pardon obliterates the offense against the public the infraction of the criminal law, relieves the offender from the punishment affixed to it by that law, washes him white from the guilt that the criminal last saw in the act, and frees him from the disabilities consequent upon the act as a guilty act against the public; it does not annul the act and relieve from all consequences of it."

The contention that there was lack of jurisdiction in the conspiracy case is without merit. Appellant offered to prove that the trial justice in that case "struck out all of the overt acts from the indictment save the first," and that in one of the stricken overt acts the trial justice had inserted the name "D. D. Graham." In other words, all the overt acts save the first were withdrawn from the jury. That this was satisfactory to appellant and the other defendants is apparent

from the fact that no question concerning it was raised in the appeal to this court. Indeed, for aught that appears, the withdrawal of the additional overt acts may have been on motion of the defendants.

 Moreover, a judgment may not be collaterally attacked unless want of jurisdiction appears affirmatively from the record. United States v. Pridgeon, 153 U. S. 48, 59, 14 S. Ct. 746, 38 L. Ed. 631; Knewel v. Egan, 268 U. S. 442, 446, 45 S. Ct. 522, 69 L. Ed. 1036; Archer v. Heath (C. C. A.) 30 F.(2d) 932. See also United States v. Norris, 281 U. S. 619, 50 S. Ct. 424, 74 L. Ed. 1076; 34 C. J. 528, § 834; 15 R. C. L. 880, § 358. In Ex Parte Bain, 121 U. S. 1, 7 S. Ct. 781, 30 L. Ed. 849, relied upon by appellant, there was but one count in the indictment, and the record disclosed that, after a demurrer had been sustained, an amendment was directed by the court. In the present case the original indictment (which we have examined) does not disclose the withdrawal of any of the overt acts. Between two lines in the second overt act appears indistinctly in pencil a name that may be D. D. Graham, but it would require extrinsic evidence to establish when the name was interlined and by whom. In other words, on the face of the record in the conspiracy case we could not find that the indictment had been changed.

We have carefully examined other assignments of error and, finding them to be without merit, we affirm the judgment.

Affirmed.