IN THE MATTER OF ARTHUR S. LYON & others.

Suffolk.    December 6, 1937. — June 30, 1938.

Present: FIELD, LUMMUS, QUA, & COX, JJ.

*Attorney at Law.   Collection Agency.   Jurisdiction,* Federal question, Control of practice of law.

Threats by laymen, members of a collection agency, to a debtor that his creditor would bring legal proceedings would not be a violation of § 46 or § 46A of G. L. (Ter. Ed.) c. 221, as they appear in St. 1935, c. 346, if in so doing they act solely as the agents of the creditor and at his express direction without making any decision of their own and in a manner lawful in other respects; but such a threat on their own initiative, or advice by them to the creditor to make such a threat, would violate the statute.

In proceedings against laymen, members of a collection agency, for violation of §§ 46 and 46A of G. L. (Ter. Ed.) c. 221 as they appear in St. 1935, c. 346, it would be proper to order the defendants to "desist or refrain from . . . representing creditors in proceedings in bankruptcy or in matters pertaining to assignments for the benefit of creditors," and from "charging or collecting any fees or commissions in and for any action, claim or suit hereafter brought, or for any judgment hereafter to be obtained in any court in this Commonwealth or in the United States District Court," with a proviso that the respondents might, however, exercise any privilege they have or may acquire under any statute, rule, order, or established practice of the Federal government or its courts controlling methods of practice in respect to matters within Federal jurisdiction.

A direction in a decree in proceedings under §§ 46, 46A, and 46B of G. L. (Ter. Ed.) c. 221, as they appear in St. 1935, c. 346, that laymen, members of a collection agency, should "desist and refrain from . . . receiving and referring and forwarding claims for collection to an attorney, anywhere, whether or not the said respondents will receive either a fee therefrom immediately or a portion of the proceeds upon collection of the same, whatever term may be applied to such portion, and whether acting therein as an agent, principal, or otherwise," was ordered modified so as not to restrain the respondents from forwarding claims for collection, at the request and as the mere agents of creditors to attorneys at law selected by the creditors, between whom and the creditors the full and direct relation of attorney and client should exist.

It was not necessary to express in a decree in proceedings under §§ 46, 46A, and 46B of G. L. (Ter. Ed.) c. 221, as they appear in St. 1935, c. 346, a limitation of acts therein prohibited to such as should be committed within the Commonwealth.

PETITION, filed in the Supreme Judicial Court for the county of Suffolk by the Attorney General on October 16, 1935, under G. L. (Ter. Ed.) c. 221, § 46, as amended by St. 1935, c. 346, § 1; and §§ 46A and 46B as inserted by § 2 of said c. 346, against eight individuals, all nonresidents of the Commonwealth except one, doing business under the name and style, Lyon Furniture Mercantile Agency.

After a hearing by *Pierce*, J., an "order for judgment" was entered directing the respondents "to desist and refrain from:

"1. Representing by advertisement or by any means whatsoever as having the right to give legal advice or to render any services involving legal knowledge or skill.

"2. Practicing law in any form, either directly or indirectly, through the medium of agents or otherwise, for or in behalf of any patrons.

"3. Advertising or holding themselves out as maintaining for the benefit of their patrons a department for the furnishing of legal services of any kind.

"4. Entering into agreements or contracts whereby said respondents agree to furnish or render legal services, directly or indirectly, through the medium of agents or otherwise, either in court or out of court, on behalf of any person, firm or corporation.

"5. Filing, prosecuting, managing or defending, directly or indirectly, through the medium of agents or otherwise, any actions or suits in behalf of another in any court within the Commonwealth of Massachusetts.

"6. Soliciting patrons under any agreement or contract whereby the said respondents agree to furnish legal services, directly or indirectly, through the medium of agents or otherwise, to any person, firm or corporation.

"7. Prosecuting or defending suits now pending for or on behalf of any of their patrons.

"8. Using any language, oral or written, which threatens expressly or by implication legal action by the respondents or respondents' patrons against debtors of patrons.

"9. Representing creditors in proceedings in bankruptcy

or in matters pertaining to assignments for the benefit of creditors.

"10. Soliciting or accepting claims for collection with an understanding, condition or agreement contemplating the use of legal process by the respondents in any manner whatsoever through the medium of agents or otherwise.

"11. Collecting and appropriating for their own use any attorneys' fees, earnings of attorneys, or any part thereof.

"12. Charging or collecting any fees or commissions in and for any action, claim or suit hereafter brought, or for any judgment hereafter to be obtained in any court in this Commonwealth or in the United States District Court.

"13. Receiving and referring and forwarding claims for collection to an attorney, anywhere, whether or not the said respondents will receive either a fee therefrom immediately or a portion of the proceeds upon collection of the same, whatever term may be applied to such portion, and whether acting therein as an agent, principal, or otherwise.

"14. Engaging in the business of soliciting or making contracts by the terms of which services requiring legal knowledge and skill will be supplied or furnished, whether such legal services are to be performed by the said respondents or by others at their expense."

The respondents "appealed from said order and alleged exceptions thereto," and the single justice reserved and reported the case.

*J. J. Kaplan*, (*L. McClennen* with him,) for the respondents.

*M. M. Goldman*, Assistant Attorney General, for the Attorney General.

QUA, J. The single justice has reported for determination by the full court the questions whether an order made by him for final disposition of the cause is "too broad" as to the relief granted in certain respects hereinafter discussed.

By G. L. (Ter. Ed.) c. 221, § 46B, inserted by St. 1935, c. 346, § 2, jurisdiction is expressly conferred upon this court upon petition of the Attorney General to restrain the practice of law by corporations or associations or by individuals who are not members of the bar in good stand-

ing.  See also §§ 46 and 46A, as inserted by St. 1935, c. 346, §§ 1, 2; *Opinion of the Justices*, 279 Mass. 607; and *Opinion of the Justices*, 289 Mass. 607.  The respondents are not attorneys at law.  They maintain a collection agency.  They employ persons to solicit accounts from business houses and individuals.  The single justice found, solely for the purpose of enabling the court to enter such order or judgment as might be warranted as matter of law, that the respondents maintain a legal department and furnish and render services requiring legal knowledge and skill.  It is unnecessary to recite their activities in further detail, as for the purposes of this case it is plain that they must be taken to have been practising law unlawfully.  *Matter of Shoe Manufacturers Protective Association, Inc.* 295 Mass. 369.  By the terms of the order of the single justice the respondents are to be restrained from practising law in any form, directly or indirectly, through agents or otherwise, from representing themselves as having the right to practise, from supplying legal services, and from collecting any attorneys' fees for their own use.  There are further more specific prohibitions in connection with some of which the questions reported arise.

By paragraph 8 of the order the respondents are to be restrained from threatening, expressly or by implication, legal action against debtors, to be brought either by themselves or by their patrons.  They concede that they cannot threaten that they themselves will bring suit, but insist that they should not be prevented from threatening that their patron, the creditor, will do so.

To determine whether a lawsuit may properly be commenced, and therefore whether it is justifiable to threaten to commence it, requires special knowledge of the legal elements constituting a cause of action.  To make a business of acting for or advising others in these matters partakes of the practice of law.  On the other hand, a creditor may bring an action himself without the intervention of a member of the bar, G. L. (Ter. Ed.) c. 221, § 48, and of course may decide whether or not he will do so or threaten to do so.  And an individual may act through agents.  See

§ 49.  We think, therefore, that the respondents cannot on their own initiative threaten that one of their patrons will bring suit, nor can they advise him to make such threat. But we think they may at his express direction and acting solely as his agents or mouthpiece, without making any decisions of their own, and in a manner lawful in other respects, threaten that their patron will bring suit.  Even if this is done habitually at the direction of various patrons it does not seem to us to involve the practice of law.

Paragraphs 9 and 12 may be considered together.  The respondents contend that these paragraphs are too broad in prohibiting the respondents from representing creditors in proceedings in bankruptcy and from charging or collecting fees or commissions in and for any action, claim, or suit hereafter brought or judgment hereafter to be obtained "in the United States District Court."

The discussion on this point starts with the premise that we have neither power nor inclination to interfere in any way with proceedings in Federal courts, or before officers appointed by them.  We further concede fully the Federal power finally to determine who shall practise law before these courts or officers.  *Matter of Ulmer*, 268 Mass. 373, 393.  But we are not satisfied that this ends the matter. The regulation in the public interest of occupations and professions such as those of law, medicine and others which, if uncontrolled, may develop methods and practices inimical to the public welfare, is historically and logically, and we think also legally, a matter primarily of State concern. Practice as an attorney in bankruptcy and other litigation in Federal courts commonly is not confined to acts performed in court or before judicial officers.  See *Opinion of the Justices*, 289 Mass. 607, 613.  Ordinarily it involves the maintenance of a place of business and the doing of acts similar to and concurrent with those done in relation to proceedings in State courts.  When such practice is carried on by unauthorized persons the resulting evils are the same and reach out into the community in the same way as if the subject matter related to litigation in State courts.  It would be almost impossible to separate the practice of law

by persons practising in both jurisdictions into two water-tight compartments, and regulation based upon an attempt to do so involving joint or complementary action by each jurisdiction as to each item of conduct would be weak and ineffectual. This Commonwealth and other States maintain elaborate machinery for ascertaining the qualifications of applicants for admission to the bar. G. L. (Ter. Ed.) c. 221, §§ 35–37. The Federal courts, on the other hand, commonly rely to a large extent upon the evidence of qualification furnished by admission to practice in the State. See, for example, Rule 2 of the Supreme Court of the United States (1928) and Rule 3 of the District Court of the United States for the District of Massachusetts (1931, as amended 1934). The police power of the State to deal with matters of public morality and security against fraud, malpractice and injustice does not come to an end merely because such matters may become in some way connected with litigation in Federal courts. That power may be exercised to the full so long as its exercise in no way interferes with any Federal function.

It is the declared policy of this Commonwealth that only members of its bar should practise law or hold themselves out as authorized to practise law. G. L. (Ter. Ed.) c. 221, § 46A, as inserted by St. 1935, c. 346, § 2. We understand not that the Federal government has adopted any policy in conflict with this, but rather that, within its sphere, it pursues a similar policy of its own. U. S. Rev. Sts. § 747. U. S. C. Title 28, § 394. And it is settled that in the matter of disbarment of an attorney either jurisdiction will give great weight to action taken by the other. *Selling* v. *Radford*, 243 U. S. 46. *Matter of Ulmer*, 268 Mass. 373, 400. We concede that our policy and our statute must yield to any valid rule, order or established practice of the Federal courts controlling the practice of law in respect to matters within their jurisdiction, but we see no reason why our policy or statute should give way in favor of persons who seek to escape State regulation of the practice of law on the ground that their practice is within the field of Federal jurisdiction, when they are not authorized to practise in

that jurisdiction. Within these limits enforcement of our act according to its terms does not interfere with any Federal function. But if it be true, as the respondents contend, that Federal law permits a layman to make a business of representing creditors to some extent in bankruptcy proceedings, we do not undertake to interfere with the exercise of that privilege. The Federal decisions are not uniform as to the existence of the privilege. *In re Mayflower Hat Co. Inc.* 65 Fed. (2d) 330. *In re H. E. Ploof Machinery Co.* 243 Fed. 421. *In re Looney,* 262 Fed. 209. *In re N. S. Dalsimer & Co. Inc.* 56 Fed. (2d) 644. *Rinderknecht* v. *Toledo Association of Credit Men,* 13 Fed. Sup. 555.

Our conclusion on this branch of the case finds support in *Depew* v. *Wichita Association of Credit Men,* 142 Kans. 403, 414–416, certiorari denied *Wichita Association* v. *Depew,* 297 U. S. 710, *Richmond Association of Credit Men, Inc.* v. *Bar Association of the City of Richmond,* 167 Va. 327, 342–345, and *L. Meisel & Co.* v. *National Jewelers' Board of Trade,* 90 Misc. (N. Y.) 19, affirmed 173 App. Div. (N. Y.) 889.

The references to proceedings in bankruptcy and to the District Court of the United States will remain in paragraphs 9 and 12 of the order, but the wording of those paragraphs will be modified by adding a statement or proviso that they shall not affect the exercise by the respondents of any privilege which they now possess or may acquire under any statute, rule, order or established practice of the Federal government or of its courts controlling methods of practice in respect to matters within Federal jurisdiction.

The thirteenth paragraph of the order ought not to have restrained the respondents from forwarding claims for collection, at the request and as the mere agents of the patron, to attorneys at law selected by the patron and between whom and the patron the full and direct relation of attorney and client shall exist. The respondents must not in any sense interpose themselves between the patron and his lawyer. They must not control the lawyer's conduct of the matters in his charge, or give him directions, or "split fees" with him, or receive any commission upon his fees or hold

him out as their attorney. *Matter of Maclub of America, Inc.* 295 Mass. 45. *Matter of Shoe Manufacturers Protective Association, Inc.* 295 Mass. 369, 372–373. *Matter of Thibodeau,* 295 Mass. 374, 378–379.

There is no occasion for express limitation of the acts prohibited to such as are performed within this Commonwealth. We do not undertake to regulate the practice of law in other States. Neither do we intend that our decrees regulating practice here shall be frustrated by anything which the respondents may do elsewhere in so far as we have jurisdiction to prevent it. The decree to be entered must be construed reasonably and enforced as occasion may arise in conformity with established principles.

The order of the single justice is to be modified in accordance with this opinion.

*Ordered accordingly.* ·