257 S.W.2d 679 (1953)
In re PAGE.
No. 43162.
Supreme Court of Missouri, en Banc.
April 13, 1953.
Rehearing Denied May 8, 1953.
*680 Clifford Greve and Winston Cook, St. Louis, for informants.
Ignatius Page, St. Louis, pro se.
HOLLINGSWORTH, Judge.
This is an original indirect contempt proceeding based upon a complaint filed by the Bar Committee of the Eighth Judicial Circuit of Missouri against Ignatius Page, charging that subsequent to an order of this court disbarring Page from the practice of law in this State he represented and held himself out as a licensed attorney at law, and, as such, undertook to negotiate and effect settlement of a claim of one Daniel Hill against the Chicago, Burlington & Quincy R. R. Co. Page answered, admitting his disbarment and denying the other allegations of the complaint, to which answer is attached a photostatic copy of a certificate of the Clerk of the District Court of the United States for the Western District of Missouri, dated March 6, 1952, reciting that Ignatius Page was duly admitted and qualified as an attorney and counselor, solicitor, advocate and proctor of said District Court on the 7th day of December, 1929.
Honorable Leslie A. Bruce was appointed special commissioner to take the evidence on the issues made by the pleadings and to report the same together with his findings of fact and conclusions of law to this court, which he has done.
The order of this court cancelling the license of Ignatius Page as an attorney and disbarring him from the practice of law in this State was entered on March 10, 1947. Pearcy v. Page, 356 Mo. 192, 201 S.W.2d 403. That order is still in full force and effect.
Under date of September 26, 1951, Page
typed, signed, mailed and the addressee received
a letter in words and figures following:
 "Ignatius Page
 Lawyer
 2007 A Market Street
 St. Louis 3, Missouri,
 September 26th, 1951
"C. B. & Q. R. R. Co.
 Galesburg, Illinois.
"Gentlemen:
"I am writing this letter to you in behalf of of One of your employes Daniel Hill, #13, who suffered injury to his Ring Finger on his left Hand on September 7th, 1951, about 7:30 a. m. at Avon, Illinois, Camp 24, C. B. & Q. R. R. Co. The Foreman, Albert Harron had him unloading Ice.
"He is expecting compensation for his injury he suffered, so I would appreciate your advising me what you intending to do in this matter.
"Hoping to receive an early reply.
"I am very respectfully yours,
"P. S. His Social Security Number is XXXX-XXX-XX.
/s/ Ignatius Page" In like manner, Page thereafter mailed and the addressee received a second letter *681 which, omitting an immaterial paragraph and postscript, is in words and figures:
 "Ignatius Page
 Lawyer
 2106 Randolph Street
 St. Louis 3, Missouri.
 November 8th, 1951.
"C. B. & Q. R. R. Co.
 "Galesburg, Illinois.
`Gentlemen:
"On September 26th, 1951, I wrote you a Letter from 2007 A Market Street, St. Louis 3, Missouri, in behalf of One Daniel Hill, #13, he is One of your Employees, who suffered injuries to his Ring Finger on his left Hand on September 7th, 1951, on a Friday morning about 7:30 a. m. at Avon, Illinois, Camp 24, C. B. & Q. R. R. Co. The Foreman, Mr. Albert Harron, had him unloading Ice.
"I have not heard from you in any way. He is expecting compensation from you for his injuries he sufferred, as aforementioned. I regret very much that you did not reply to my Letter of September 26th, 1951, and I am sorry to state that he is going to complain and continue to claim and hold a claim against you until you make some sort of settlement with him in the premises.
* * * * * *
"Not hearing from you within a reasonable time I will assume that you do not intend to answer my letters, and the course is open for other stepts.
 "I am very respectfully yours,
 /s/ Ignatius Page"
C. A. Jones, Claim Agent of the Chicago, Burlington & Quincy R. R. Co., at Galesburg, Illinois, on November 12, 1951, mailed and Page duly received a letter, in part, as follows:
 "Ignatius Page
 Attorney
 2106 Randolph St.
 St. Louis 3, Missouri
 "Dear Sir:
"Referring to your letter of November 8, 1951, in regard to your efforts re Daniel Hill, whom you allege was injured at Avon, Illinois on September 7, 1951.
"Please be advised that I have referred this matter to Attorney R. L. Connors, Claim Agent, Hannibal, Missouri, and no doubt he will contact you in the near future in St. Louis. * * *"
Robert W. Connor, attorney for said railroad company, on November 15, 1951, mailed and Page duly received the following letter:
 "Mr. Ignatius Page
 Attorney
 2106 Randolph St.
 St. Louis 3, Missouri
 "Dear Sir:
"I have your letter of November 8th which has been forwarded to my office from Galesburg.
"I will be in St. Louis again on the 3, 4, & 5th of December. I will call one of these dates to discuss the Daniel Hill case."
Page replied, as follows:
 "Ignatius Page
 Lawyer
 2106 Randolph Street,
 St. Louis 3, Missouri.
 November 28th, 1951.
"Mr. Robert W. Connor, Attorney.
 Hannibal, Missouri.
"Dear Sir:
"I received your letter of November 15th, in which you stated that you will be in St. Louis again on the 3, 4 & 5th of December, and in reply I beg to state that I would appreciate if you can call the 3rd or 4th at any hour you appoint on either 3rd or 4th, since I have a little other matters on the 5th. Then, I will have Daniel Hill where ever you say be at any hour to discuss his case against the C. B. & Q. R. R. Co.
"The Law Office of Mr. Albert L. Eagland, 2838 Cass Ave. is a good place to discuss Hill's Case, but there is no Stenographer or Typewriter There.

*682 "I would be pleased to hear from you with as little delay as possible.
"You may reach my by phone, Ch 4738, or leave a message if you miss me at that phone number.
"I am very respectfully yours,
 /s/ Ignatius Page"
In each of the three letters written by Page, both the letterhead and the contents of the letter, with the exception of Page's pen-written signature, were typewritten. The envelopes in which the letters were sent also had typewritten thereon in capital letters the return address: "Ignatius Page, Lawyer", followed by the name and number of the street shown on his letterheads.
At the hearing Robert W. Connor, a claim agent for the railroad company with offices at Hannibal, Missouri, and at 107 Franklin Avenue, St. Louis, Missouri, testified: He is a licensed attorney at law in the State of Missouri. His duties are to investigate and, if possible, to effect settlements of personal injury claims made against the company. On or about the 25th day of October, 1951, his superior officer, C. A. Jones, sent him the file on the Hill claim. He wrote the clerk of this court as to Page's status as an attorney and was advised of his disbarment. On the 6th day of December, 1951, pursuant to a telephone conversation with Page, Daniel Hill and Page came to Connor's office in St. Louis and discussed settlement of the claim. Page told Connor he represented Hill. Connor attempted to conduct the negotiations directly with Hill, but Page continually "broke into" the conversation. Page advised Hill several times that he felt his injury was of a large nature and that he could get several hundred dollars out of it, and that his claim came under the Federal Employers' Liability Act. The discussion became heated. Connor, in the presence of Hill, told Page of his knowledge of Page's disbarment. Hill turned to Page and said, "Well, I thought you said you was a lawyer, Nigger." (Both Hill and Page are Negroes.) A settlement of $100 was agreed upon. Hill signed a release and Connor delivered to Hill a draft payable to Hill. Hill said he would take care of Page later.
Page testified: He had known Hill for quite a while. Hill worked for the railroad, traveled. "He [Hill] didn't know where he was going, but he could get in touch with me but he wouldn't know where he would be to get in touch with the railroad company.", After getting "in touch" with the company, he [Page] was notified to bring Hill to Connor's office, which he did. Hill and Connor agreed upon the settlement and the draft was made payable and delivered to Hill. He acted as a friend of Hill, did not represent him as an attorney, and received no fee whatever for what he did. He at no time told Connor or anyone else he represented Hill. Hill did not want a lawyer; he said he wanted to represent himself.
And further: "I read the United States District Court, that if an employee of a railroad company is injured in the company, injured by the company, while an employee of the company, United States District Court has concurrent jurisdiction with the several states, and also. * * *
"Commissioner Bruce: You claim that you did not represent him as an attorney, is that true?
"The Witness: That is true. * * *
"Commissioner Bruce: Or holding yourself out as an attorney, but on the other hand, you claim you had a right to represent him as an attorney because you were admitted to practice in the Federal Courts and still are admitted to practice in the Federal Courts?
"The Witness: Had I saw fit to represent him, I was in a position to do it in the Federal Court."
Hill did not testify.
Page has filed numerous motions seeking dismissal of the action, contending that the Bar Committee has no authority or right in law or by virtue of any established procedure or rule of this court to file or prosecute the complaint made by it. The contention is without merit. See Supreme Court Rule 5; Hulse v. Criger, Mo. Sup., 247 S.W.2d 855.
*683 Page's contention that his admission as a qualified attorney of the U. S. District Court of the Western District of Missouri exempts him from the charge of contempt here filed seems to run in this vein: Hill's claim for damages could have been prosecuted in the Federal courts under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq.; ergo, the aforesaid license is a warrant of authority from a superior jurisdiction to Page to represent Hill in negotiating a settlement of the claim. The conclusion is untenable.
An analogous situation was well considered by the Supreme Judicial Court of Massachusetts, in the case of In re Lyon, 301 Mass. 30, 16 N.E.2d 74. In that case, Lyon and his associates, who were not licensed attorneys at law, had been engaged in operating a collection agency. A single justice of that court, after hearing a complaint filed against Lyon and his associates by the Attorney General of Massachusetts, had entered an order which, among other things, specifically restrained them from representing creditors in bankruptcy proceedings. The order was under review by the full court. The contention was made that this part of the order was too broad. In discussing the contention, the court said, 16 N.E.2d loc. cit. 76-77: "We further concede fully the Federal power finally to determine who shall practice law before these courts or officers. * * * The regulation in the public interest of occupations and professions such as those of law, medicine and others which, if uncontrolled, may develop methods and practices inimical to the public welfare, is historically and logically, and we think also legally, a matter primarily of State concern. Practice as an attorney in bankruptcy and other litigation in Federal courts commonly is not confined to acts performed in court or before judicial officers. * * * Ordinarily it involves the maintenance of a place of business and the doing of acts similar to and concurrent with those done in relation to proceedings in State courts. When such practice is carried on by unauthorized persons the resulting evils are the same and reach out into the community in the same way as if the subject matter related to litigation in State courts. It would be almost impossible to separate the practice of law by persons practising in both jurisdictions into two watertight compartments, and regulation based upon an attempt to do so involving joint or complementary action by each jurisdiction as to each item of conduct would be weak and ineffectual. * * * The police power of the State to deal with matters of public morality and security against fraud, malpractice and injustice does not come to an end merely because such matters may become in some way connected with litigation in Federal courts. * * *" The court then modified the order so as not to deprive Lyon and his associates of any privilege they then possessed under any statute, rule or order of the Federal Government regulating practice in Federal jurisdictions. See also In re Tinkoff, 7 Cir., 101 F.2d 341.
The gravamen of the offense with which Page is here charged is his contemptuous violation of the order of this court disbarring him from the practice by holding himself out as a practicing lawyer and, in that capacity, representing Hill in negotiating settlement of a claim that had never reached the Federal, or any other, court. So clearly is the transgression here charged a matter exclusively within the jurisdiction of this court, the contention need not be further considered.
"It is uniformly held that for one to hold himself out as a practicing attorney after he has been disbarred is a contempt of the court which disbarred him." Bowles v. United States, 4 Cir., 50 F.2d 848, 851, certiorari denied 284 U.S. 648, 52 S.Ct. 29, 76 L.Ed. 550. See also: Bowles v. Laws, 59 App.D.C. 399, 45 F.2d 669; In re Lizotte, 32 R.I. 386, 79 A. 960, 35 L.R.A.,N.S., 794; In re Duncan, 83 S.C. 186, 65 S.E. 210, 24 L.R.A.,N.S., 750; State ex rel. Patton, Atty. Gen. v. Marron, 22 N.M. 632, 167 P. 9, L.R.A.1918B, 217; People ex rel. Colorado Bar Ass'n v. Humbert, 86 Colo. 426, 282 P. 263; 7 C.J.S., Attorney and Client, § 40, page 814; 5 Am.Jur., Attorneys at Law, § 299, p. 442. The question is thus narrowed to whether the acts and conduct *684 of Page as shown by the evidence amounted to holding himself out as a practicing attorney.
Page, in his answer, states: "I usually type on the letters I type, after my name, the word Lawyer, with my address and date of the letter, but I have no letterheads, and I have no cards. I am a Lawyer, and I will be a Lawyer as long as I Live, and keep my right mind. Webster's Unabridged New International Dictionary, defines the "Word" Lawyer as One versed in the Laws......I, Ignatius Page, can not legally be punished for knowing the "Laws". When used in the manner herein shown and as alleged by Page, the words "lawyer" and "attorney" "are synonymous, and hence any one advertising himself as a lawyer holds himself out to be an attorney, an attorney at law or counselor at law." People ex rel. Colorado Bar Ass'n v. Taylor, 56 Colo. 441, 138 P. 762, 763; 7 C.J.S., Attorney and Client, § 3d, page 703.
In Bowles v. Laws, supra, a disbarred attorney sent out letters bearing his name on the heads thereof followed by the words "Attorney at law" [59 App.D.C. 399, 45 F. 2d 671] and his address, in which he threatened suits against the addressees for wrongs allegedly done to persons in whose behalf he wrote. The court held that such acts constituted holding himself out as a licensed attorney, and punishment for contempt was assessed.
In re Lizotte, supra, a disbarred attorney retained a sign upon his office door setting forth his name followed by the words "`Attorney at law'" [32 R.I. 386, 79 A. 961], transferred the sign to another office door to which he subsequently moved, and thereafter represented clients by writing letters in their behalf upon stationery carrying his name followed by the words "`Attorney at law'". The court held him guilty of contempt.
In State ex rel. Patton v. Marron, supra, a disbarred attorney was held guilty of contempt upon showing that he maintained an office displaying a sign thereon indicating it was a law office, by using and sending through the mails stationery indicating that he was an attorney at law and by permitting his name to be published in directories as an attorney at law.
To the same effect is the case of People ex rel. Colorado Bar Ass'n v. Humbert, supra.
We need not here decide the relationship between Hill and Page. It does not matter whether Hill engaged Page in good faith in the belief that Page was a licensed attorney; although we may say in passing that such an inference is justifiable. The fact that Hill, for whom Page admittedly was acting in some capacity, was not called as a witness by Page is a circumstance strongly indicating that his testimony would have been unfavorable to Page.
The deliberate typing by Page of the legend set forth on the heading of the letters he sent the company in behalf of Hill and on the envelopes in which they were sent; his acquiescence in the letters received in reply thereto in which he was addressed as "attorney"; his appearance with Hill and his conduct at the conference with Connor; his failure to repudiate the statement Hill there made to him: "Well, I thought you said you was a lawyer, * * *"; the admissions made in his answer; his equivocal testimony that he did not represent Hill as an attorney at law coupled with a claim of his right to represent him by reason of the unrevoked certificate of the U. S. District Court showing his enrollment there as an attorney: all point most persuasively to his guilt. The evidence establishes beyond a reasonable doubt that Page held himself out to the railroad company as an attorney at law representing Hill in the matter of his claim against the company. In so doing, he is guilty of contempt as charged in the complaint.
Ignatius Page is hereby adjudged guilty of contempt of this court as charged. His punishment is fixed at a fine of $100 and payment of all costs of this cause, and in default of payment thereof he shall be imprisoned in the jail of the County of Cole, State of Missouri, for a term of thirty days. See Section 476.120 RSMo 1949, V.A.M.S.
All concur.