MADDOX, Justice.
This is a “quo warranto” proceeding brought in the name of the State of Alabama on the relation of Irvine C. Porter, the Chairman of the Unauthorized Practice of Law Committee of the Alabama State Bar Association. The jury found that by virtue of its collection business, the Association is engaged in the unauthorized practice of law. The trial judge ordered the Association to refrain from certain activities but allowed it to continue collecting “undisputed and uncontested delinquent accounts.” Both parties appealed.
The Association is an organization of approximately 700 businesses in Alabama which extends credit to other businesses. It has five offices and is engaged in business throughout the state. It provides its members with credit reports, a pre-collection service, and a collection service. A member can obtain a credit report on a customer or potential customer for a fee ranging between $3 and $5.25. The report is limited to the actual experience other Association members have had in obtaining payment from the person or entity whose credit standing is being reported.
The pre-collection service consists of two form letters the Association sends the debt- or. The first letter seeks to have the debt- or make payment directly to the creditor. If payment is not made within 15 days, the second letter is sent. When this service is used, the member is charged a fee but the account is not considered as placed with the Association for collection.
Upon filling out a form, a member can turn an account over to the Association for collection. If payment is made after one letter, and within ten days, there is no charge to the member. If not, the Association mails a series of form letters and in some cases, makes telephone calls to the debtor. If the Association cannot collect the amount, an employee calls the member and asks what he wants done with the account. If the member wants to turn the account over to an attorney, but does not have one, the Association will send the account to one of the attorneys who is a member of the Association. When the Association forwards the account to an attorney, it uses a form letter setting forth the suggested fee to be charged by the attorney and advises the attorney that the creditor has authorized remittance of the amount collected to be made to the Association. The Association charges a “follow-up fee” equal to 5% of the total amount collected by the attorney.
Based upon the jury’s determination that the Association was engaged in the unauthorized practice of law, Judge Haley entered the following order:
“IT IS FURTHER ORDERED AND ADJUDGED by the Court that the defendant, Alabama Association of Credit Executives, and every officer, agent or employee of said corporation, be and is hereby required to cease and desist, and in the future to refrain from doing itself or assisting any other person, either directly or indirectly, in doing any of the following:
“1. By letter, telephone or other means of communication, make any threat to any person, either expressed or implied, that a legal action or process of any kind whatsoever will be brought or contemplated in order to recover from such person or have such person pay any debts or other obligations owed by such person or claimed to be owed by such person to any other person, firm or corporation;
“2. Employ on behalf of any other person, any attorney to represent such person or receive on behalf of any person, any recoveries or collections of any such accounts or other obligations made by any attorneys for such other person;
“3. Accept employment from any attorney to recover or attempt to recover any amounts owed by any person to any other person;
*814 “4. Employ any other person, firm or corporation for the purpose of collecting or attempting to collect in an unauthorized manner, any obligation or debt owed by any person to any other person;
“5. Undertake to settle, adjust, compromise or collect any amount due from any person whenever any dispute or question shall arise with respect to such indebtedness.
“The defendant may collect undisputed and uncontested delinquent accounts so long as its efforts in so doing do not transgress the other provisions of this Order.” [Emphasis added.]
On appeal to this Court, Porter contends that the italicized portion of the trial court’s judgment should have been deleted and the Association should have been restrained from directly or indirectly engaging in the collection of defaulted accounts. The Association, in its cross-appeal, challenges the remaining portions of Judge Haley’s order.
The first question we will address is the issue raised by Porter: Does the mere collection of undisputed and uncontested delinquent accounts for another by one who is not a licensed attorney constitute the unauthorized practice of law in Alabama? Judge Haley ruled that such activity does not constitute the practice of law. We agree.
The controlling statute is Title 46, Code of Alabama 1940, § 42 (Recomp.1958). It provides in pertinent part:
“Who may practice as attorneys.—Only such persons as are regularly licensed have authority to practice law. For the purposes of this article, the practice of law is defined as follows: Whoever, . (d) as a vocation, enforces, secures, settles, adjusts or compromises defaulted, controverted or disputed accounts, claims or demands between persons with neither of whom he is in privity or in the relation of employer and employee in the ordinary sense; is practicing law. . . . ”
Porter contends that by passing this statute, the Legislature intended to prohibit the out-of-court collection of defaulted accounts on behalf of creditors by those not licensed to practice law. We do not think so.
We believe the Legislature intended to insure that laymen would not serve others in a representative capacity in areas requiring the skill and judgment of a licensed attorney. The words used by the Legislature were “ . . . enforces, secures, settles, adjusts or compromises controverted or disputed accounts . . ” Had the Legislature intended to prohibit collecting, it could have so stated.
Our ruling is consistent with the rule followed in other jurisdictions. The rule is stated in the annotation, Operations of Collection Agency as Unauthorized Practice of Law, 27 A.L.R.3d 1152, 1156, as follows:
“It appears to be well settled that a collection agency in making a peaceful collection of a claim or in making a friendly adjustment of a bill without resort to a court of law does not engage in the unauthorized practice of law. In other words, the operation of a collection agency by and in itself does not constitute the practice of law.”
As to Porter’s appeal, we affirm.
As stated above, the Association challenged the remaining provisions of Judge Haley’s order. We will treat each section in his order seriatim.
Judge Haley properly prohibited the Association from threatening debtors that legal action would be brought or contemplated if the debt was not paid. As stated in In re Lyon, 301 Mass. 30, 16 N.E.2d 74, 76 (1938):
“To determine whether a law suit may properly be commenced, arid therefore whether it is justifiable to threaten to commence it, requires special knowledge of the legal elements constituting a cause of action. To make a business of acting for or advising others in these matters partakes of the practice of law. . . ”
*815 The next question is whether the Association can forward accounts from its members to attorneys. The trial judge enjoined this practice. We modify his prohibition of this activity.
In State ex rel. Porter v. Dun & Bradstreet, Inc., 352 F.Supp. 1226 (N.D.Ala. 1972) aff’d mem., 472 F.2d 1049 (5th Cir. 1973), the Court found that it was not an unauthorized practice of law for a collection agency to forward a claim to an attorney the agency selected at the request of the creditor, since in that case, it was established that once the agency forwarded the claim, it gave no advice to the attorney and exercised no control over the attorney. The agency did not receive a share of the attorney’s fee. We believe Dun & Bradstreet states the general rule.
Collection agencies can forward a creditor’s accounts to an attorney for collection so long as the creditor gives the agency such authority in writing and the attorney-client relationship is established between the creditor and the attorney. The American Bar Association Committee on Unauthorized Practice of Law adopted a Statement of Principles relating to collection agencies on May 4, 1937. It provides in pertinent part:
“1. A collection agency may engage in the business of collecting past-due accounts for customer-creditors (hereinafter ‘creditors’) provided, however, that the agency may not:
“(f) Employ or terminate the services of attorneys or arrange the terms or compensation for such services on behalf of creditors without written authority to do so; .
“4. When authorized by a creditor, it is proper for an agency as agent for the creditor, to conduct correspondence of a routine nature (such as inquiries and reports with respect to status of the claim) on behalf of the creditor with the attorney to whom the creditor’s account has been transmitted for collection, and, in general, to carry on activities similar to those ordinarily carried on by the collection department of a creditor organization provided that the attorney shall be free at all times to communicate with the creditor and provided further (i) that the agency may not attempt to control or in any wise suggest or imply that it has any right to control the actions of the attorney or otherwise interfere with the attorney-client relationship between the creditor and the attorney, and (ii) that decisions as to the manner in which the claim is to be handled by the attorney, whether suit is to be brought, the claim is to be compromised or settled, whether the claim is to be returned, and any other matters requiring the decision of the creditor shall in each instance be left solely to the creditor and the attorney in direct communication with each other when the attorney so desires and the attorney shall be so advised in the forwarding letter. Copies of correspondence between the attorney and the agency need not be forwarded to the creditor unless the creditor requests otherwise. When the agency receives from the attorney an accounting concerning a collection made by the attorney, such accounting or the details thereof shall be promptly transmitted by the agency to the creditor.” [Emphasis added.]
The following amendment was added February 18, 1968:
“RESOLVED, that it is improper for a collection agency to forward a claim for collection or other purpose to a lawyer having any proprietary or monetary interest either directly or indirectly in the agency, except that forwarding to an attorney shall not be precluded because of his minority stock interest in a publicly owned corporation.” IV Martindale-Hub-bell Law Directory 75c, 76c (1976).
We recognize that if not done properly, forwarding accounts can create a conflict of interests, but if an agency or person adheres to the statement of principles quoted above, any potential conflict of interests will be eliminated and a possible public *816 interest served. In fact, allowing collection agencies to forward accounts has been said to be in the public interest. In an opinion of the American Bar Association Standing Committee on the Unauthorized Practice of Law, the following view was expressed:
“It should be noted that many claims which are forwarded to attorneys for collection go to attorneys remote from the residence of the client. It is obvious that the client, who may never have had a claim for that locality, has not the facilities for selecting an attorney equipped and capable of handling collections. If the public prefer to have collection agencies, which through years of experience have these facilities, forward claims, it is both impracticable and impossible for the bar to insist that the public must find a different way of handling its business in this field. To prohibit the public from authorizing collection agencies to forward claims, and to insist that collection agencies must return claims to their owners under all circumstances, and to compel owners to find lawyers to handle them, are beyond the power and proper province of the bar.” 36 Unauthorized Practice News, 43, 45 (June 1972).
We hold, therefore, that a collection agency can forward accounts to attorneys, if it follows the guidelines we have set out in this opinion.
The agency challenged the prohibition against its accepting employment “from any attorney to recover amounts owed by any person to any other person.” We construe this provision as preventing attorneys from using the agency to assist in collecting accounts which they have accepted for collection. It is not to be viewed as prohibiting an attorney from using a collection agency to recover his own personal debts. Otherwise, the prohibition is valid.
The agency further contends generally that to the extent that its activities constitute the practice of law, these activities are protected under the Constitution. The Association cites the following cases: NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); Broth. of RR Trainmen v. Virginia, 377 U.S. 1, 84 S.Ct. 1113, 12 L.Ed.2d 89 (1964); United Mine Workers of America v. Illinois State Bar Asso., 389 U.S. 217, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967). We believe these cases are distinguishable from the case at bar.
Having examined each of the agency’s specification of error on cross-appeal, we find none, except as noted. The cause is affirmed, in part, and reversed, in part, with instructions that the order be modified to conform to the holding made herein.
AFFIRMED, IN PART; REVERSED, IN PART; AND REMANDED, WITH DIRECTIONS.
HEFLIN, C. J., and JONES, SHORES and BEATTY, JJ., concur.